HENRY M. NOEL et al., Respondents, v. ROLAND HILL, Appellant.

St. Louis Court of Appeals.    Argued and Submitted March 9, 1911.    Opinion Filed June 6, 1911.

1. BUILDING RESTRICTIONS: Validity. While the law favors the free use of real estate, proper building restrictions on the use of property of such a character as the law permits to be attached to land, so as to restrict the use of one parcel thereof in favor of another, are valid and enforceable on equitable grounds.

2. ————: ————: Perpetuities. A deed to a lot, which recognizes that the grantor has laid out a block into lots, subject to building restrictions, and which stipulates that after twenty-five years the owners of the greater part of the frontage on the street may modify or repeal the restrictions, and which contains no provision preventing the owners of all the lots at any time, by consent of all, from removing the restrictions, is not objectionable as creating a perpetuity, since a perpetuity is created only when there are no persons in being who can convey an absolute fee in possession, discharged of a future use or estate.

3. ————: ————: Run with Land. A grantor of land may restrict its use in a particular way, provided such restriction is not against public policy; and a covenant of this character runs with the land, when either the liability to perform it or the right to enforce it passes to the assignee or vendee of the land if he has notice of it.

4. ————: ————: Uniform Plan. The owner of a city block may divide the same into lots and impose on them building restrictions in conformity to a plan of improvement adapted for dwelling houses, though the property on the opposite sides of the streets is not subject to such restrictions, provided the restrictions are in conformity to a general uniform plan of improvement extending over the entire tract.

5. ————: ————: Failure of Plan: Facts Stated. The owner of a city block divided it into lots and imposed on them building restrictions in conformity to a uniform plan of improvement adapted for dwelling houses. The block, except two or three vacant lots, was subsequently improved in conformity to the general plan. No attempt had been made by the owner or the purchasers of the lots, other than by the purchaser of a vacant lot, to change or abandon the general plan. *Held*, not

to show a failure of the restrictions so as to render them inoperative.

6. ————: Residence Property: Becoming Suitable for Business Purposes: Effect. The mere fact that lots, subject to building restrictions created by covenants in deeds by which they were limited to use for residence purposes only, become more valuable or suitable for business than for residence purposes is not in itself any ground to justify a court of equity in overturning and annulling such covenants.

7. ————: ————: ————: Street Railway Tracks. The mere presence of street railway tracks in a street will not turn it from a residence into a business thoroughfare.

8. ————: Change of Restrictions. It is beyond the power of the grantors of a subdivision or the owners of lots therein to change the building restrictions on lots, without the consent of all who have purchased under covenants providing for such restrictions.

9. ————: Violation: Carrying on Business. The erection of billboards by an advertising company, for a consideration paid to the owner, followed by the sale or letting out of space on the billboards for hire, is carrying on business on the land and using it for business purposes in violation of a building restriction prohibiting the use of the land for business.

10. ————: Knowledge of Purchaser: Recitals in Deed. One who accepts a deed containing covenants restricting the use of the land in conformity to a general plan of improvement imposed on all the lots of a subdivision by the original proprietor has actual knowledge of such restrictions.

11. EVIDENCE: Value. The money or commercial value of a thing is not always a test of its worth.

12. BUILDING RESTRICTIONS: Validity. That building restrictions are hurtful to business and restrict the business area of the city will not prevent their enforcement.

13. APPELLATE PRACTICE: Equity Case: Modification of Decree. The appellate court will not reverse a decision in an equity case merely because it is too broad, but may either modify the decree or remand the case to the lower court with directions to do so.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED AND REMANDED (*with directions*).

*Jeptha D. Howe* and *Alphonso Howe* for appellant, Roland Hill.

(1)   The covenants in the deeds in the case at bar are peculiarly of that character known as a plan for the improvement of residence neighborhoods, and are covenants running with the land.   King v. Union Trust Co., 226 Mo. 351; Hisey v. Church, 130 Mo. App. 566.   (2)   Said building restrictions are invalid and void in that same are not imposed in conformity to a general uniform plan of improvement, and affect only a single block and only one side of the street thereof. Coglin v. Barker, 46 Mo. App. 54; Beal v. Cass, 138 Mass. 138; Ladd v. Boston, 151 Mass. 588, 68 Central Law Jour. 246.   (3) The court erred in not holding that the covenants contained in said deed restricting the use of said property are now invalid and void for the reason that the neighborhood has so changed as to render it apparent that the objects intended to be accomplished by such building restrictions have been defeated, and that it would now be inequitable, oppressive and unjust to the owner to enforce such restrictions.   Coglin v. Barker, 46 Mo. App. 54; 68 Central Law Journal, 249; Scharer v. Pantler, 127 Mo. App. 433; Am. U. Assn. v. Minot, 185 Mass. 589; Jackson v. Stephenson, 156 Mass. 496; Evans v. Foss, 194 Mass. 513; Trustees v. Thacher, 87 N. Y. 325; Muzzaretti v. Hulshizer, 163 Pa. 446; Columbia College v. Thacher, 87 N. Y. 311; Amerman v. Dean, 132 N. Y. 355; Muzzaretti v. Hulshizer, 163 Pa. 446.   (4)   The court erred in not holding that the plaintiffs were not entitled to the relief asked for by them, for the reason that the billboards do not violate the said restrictions, and for the further reason that if they did plaintiffs are estopped to complain, because of the great length of time which said billboards had been maintained upon said lot with their knowledge and acquiescence.   5 Am. and Eng. Ency. Law (2 Ed.), 15-16; Knight v. Sim-

monds, 2 Ch. 294; Roper v. Williams, I. T. & R. 18; Patching v. Dubbins, Kay 1, 23 End. L. & Eq. 609; German v. Chapman, 7 Ch. Div. 271; Linzee v. Mixer, 101 Mass. 512; Payson v. Burnham, 141 Mass. 547; Jackson v. Stevenson, 156 Mass. 502; Leonard v. Hotel Majestic Co., 17 Misc. Rep. 229; Flint v. Charman, 6 N. Y. App. 121; Ware v. Smith, 156 Mass. 186; Lattimer v. Livermore, 72 N. Y. 174. The plaintiffs claim that billboards are "business," within the meaning of the restrictions. Be that as it may, it is a well settled rule of law that everything not excluded by special terms is not excluded at all. An "apartment house," constructed for residence purposes only, is not a breach of a condition in a deed against using the property, except for "residence purposes." McMurty v. Phillips Ins. Co., 103 Ky. 308; Ruth v. Jung, 79 N. Y. (App. Div.) 1; Halt v. Fleshman, 75 N. Y. (App. Deo.) 593; Kitching v. Brown, 180 N. Y. 414. (5) Said building restrictions are invalid and void in that they are perpetual and constitute a perpetual charge against said realty and are against public policy and in restraint of alienation, and confiscatory, and the court erred in not so holding. Toby v. Moore, 130 Mass. 448; Lewis on Perpetuities, 387, etc.; Sharer v. Pantler, 127 Mo. App. 433; Saunders v. Dixon, 114 Mo. App. 229; 4 Kent's Com. 131; 1 Washburn Real Property, 317; Sonn v. Heilbury, 56 N. Y. S. 341; Hutchison v. Ulrich, 145 Ill. 336; McMurty v. Phillips, 103 Ky. 308; Postal Co. v. Western Co., 155 Ill. 347; Livingston v. Stickles, 7 Hill 255; Crusoe v. Bugby, 2 W. Bl. 776; Eckhart v. Irons, 128 Ill. 582; Hutchinson v. Ulrich, 145 Ill. 336; Eckhart v. Irons, 128 Ill. 582; 1 Devin on Deeds, 848. Building restrictions for the most part contain conditions or restrictions which affect either the person of the owner, or relate to the character of the use and occupation of the premises. In our case, they are attempted to be imposed solely for the benefit of a general plan or scheme of improve-

ment, etc.   Columbia College v. Thacher, 87 N. Y. 311;
Keates v. Lyon, L. R. A. Ch. 218; Peek v. Matthews,
L. R. 3 Eq. 517; Sayers v. Collyer, L. R. 24 Ch. Div.
180; Roper v. Williams, Turn. & R. 18; Page v. Mur-
ray, 46 N. J. Eq. 325; Duncan v. Railroad, 85 Ky.
525, Jewell v. Lee, 14 Allen, 145, 92 Am. Dec. 744; Dana
v. Wentworth, 111 Mass. 291.   And whether they be
personal to the grantor or be limited to a period less
than "forever" depends on the intention of the par-
ties, as expressed in the written instrument.   Clark v.
Martin, 49 Pa. 297; Muzzaretti v. Hulshizer, 163 Pa.
446; Bald Eagle Valley Co. v. Railroad, 171 Pa. 284,
29 L. R. A. 423; Keeler v. Taylor, 53 Pa. 467; Beard
v. Dennis, 6 Ind. 200; Crawford v. Wick, 180 Ohio St.
190.   (6)   The decree entered in this case is erroneous
in that appellant is "perpetually enjoined." Semple v.
Schwartz, 130 Mo. App. 65.

*Virgil Rule* for respondents.

(1) (a)   The size of the tract affected by the re-
strictions has no bearing on the question as to whether
there has been designed a "general uniform plan of
improvement."   Meriwether v. Joy, 85 Mo. App. 636;
Sharer v. Pantler, 127 Mo. App. 434; Improvement
Co. v. Tower, 158 Mo. 291; Landell v. Hamilton, 175
Pa. St. 327.   (b)   The restrictions which appellant has
sought to nullify conform to a general uniform plan
of improvement, designed and adopted to render the
Welles Subdivision, a high-grade residence tract.   As
such, so long as no abandonment of such plan is shown
by the owners and occupants of such tract, such restric-
tions are valid and binding, regardless of the fact that
business establishments may have approached close
to the tract on adjacent unrestricted territory or, ac-
cording to some authorities, actually invaded it.
Coughlin v. Baker, 46 Mo. App. 79; Mulligan v. Jor-
dan, 50 N. J. Eq. 363; Semple v. Schwarz, 130 Mo. App.
73.   (2)   If appellant's contention that the character

of the neighborhood surrounding the Welles Subdivision has changed from a high class residence district to one of a purely business character, were true, yet abandonment of the restriction herein sought to be enforced could not be predicated on this fact alone. Abandonment must be shown as well by the acts of the individual owners of the restricted property. Such owners cannot be bound nor is the enforceability of the restrictions affected by the acts of owners of adjacent plots of ground not covered by the restrictions nor forming any integral part of the restricted area. Rowland v. Miller, 139 N. Y. 93; Coughlin v. Barker, 46 Mo. App. 79; Sparr v. Cape, 143 Mo. App. 114 and cases cited; Lattimer v. Silvermore, 72 Mo. 174; Hisey v. Presbyterian Church, 130 Mo. App. 556; Hall v. Wester, 7 Mo. App. 56; Sanders v. Dixon, 114 Mo. App. 246; Safe Dep. Co. v. Kennett, 101 Mo. App. 390; Spahr v. Cape, 143 Mo. App. 124; Scharer v. Pantler, 127 Mo. 475; Brown v. Huber, 80 Oh. St. 183; Landell v. Hamilton, 175 Pa. 327. (3) The maintenance of billboards on the restricted lots constitutes a trade or business within the meaning of the restrictions. Beickler v. Gienther, 96 N. W. 896; Goddard v. Chaffee, 2 Allen 395; Hdw. Co. v. Mfg. Co., 86 Tex. 153; Abel v. State, 90 Ala. 633; Netterville v. Barber, 52 Miss. 171; Semple v. Schwarz, 130 Mo. App. 77. (4) The restrictions are not a perpetual charge against the realty; are not against public policy nor in restraint of alienation within the legal definition of those terms, nor are they confiscatory. Stevens v. Realty Co., 173 Mo. 511. (5) The decree does not violate the rule against perpetuities, nor did the court err in granting a permanent injunction. See authorities cited point 2, supra; Stevens v. Realty Co., supra. If the decree below is erroneous in that it fails to conform to the provisions of the restrictive covenant it may be reformed in this court without remanding the cause. Semple v. Schwarz, 130 Mo. App. 65.

REYNOLDS, P. J.—This is a suit wherein an injunction is sought to restrain defendants from the violation of certain building restrictions, to which lots in city block 3894, that block fronting on Lindell and Maryland avenues, are subject. It was admitted at the trial that every conveyance of the lots contained in this block and in which is situate lot 33, fronting on Maryland avenue, the lot involved here, contained similar provisions to those contained in the deed which was attached as an exhibit to the answer of defendants, that deed being in evidence. It is recited in this deed, that the grantor has laid out this block 3894 into lots, designating the block as Welles' Subdivision, with a view of making the subdivision suitable and desirable for first-class residences, and has, in order that said subdivision may remain a residence district exclusively, imposed upon each lot in the subdivision, for the benefit of every other lot therein, certain conditions and restrictions in the use thereof, the easement thus created and made appurtenant to each lot being an inducement to the grantee to make the purchase evidenced by the deed. The restrictions imposed on the Maryland avenue lots are, first, that the building line on Maryland avenue shall be thirty feet south of the south line of Maryland avenue and that no building or any part or portion thereof, nor any projection thereof shall at any time be erected or placed upon the space between the building line and Maryland avenue. Second, but one residence building shall be erected upon the lot, such building never to be used or occupied for any purpose except for that of a private residence, "nor shall said lot or any portion thereof ever be used for trade, manufactures, or business of any kind whatever." The third permits the erection of stables, etc., necessary to the use of the building. The fourth prescribes the minimum cost of a building erected on a lot and provides that no fence or inclosure of any kind shall be put upon the lines of the lot

between Maryland avenue and the building line. It is further provided in this fourth stipulation that after twenty-five years from the date of the deed, the owners of a majority or greater part of the frontage on Maryland avenue within the block may, by written consent, signed and acknowledged by them, alter, modify or repeal these restrictions so far as concerns the lots fronting on Maryland avenue in that block, and it is stipulated that the grantee accepts the conveyance, ''subject to the easements, restrictions and conditions above set forth, and for himself, his heirs and assigns covenants to and with the party of the first part, his heirs and assigns, that the said party of the second part will and that his heirs and assigns shall forever faithfully observe and perform said several restrictions and conditions, and each of them unless modified or repealed as above stated.'' It is further provided that if the grantee or any persons claiming under him, shall attempt to violate or omit to perform or observe any of the foregoing restrictions or conditions, it shall be lawful for any person owning a lot fronting on Maryland avenue in that block, which is subject to these same restrictions and conditions in respect to which default is made, to institute and prosecute appropriate proceedings at law or in equity for the wrong done or attempted, and the grantor covenants for himself, his heirs and assigns, that he will not at any time thereafter convey or otherwise dispose of any lot fronting on Maryland avenue in that block, except upon and subject to the foregoing restrictions and conditions, the grantor further covenanting with the grantee, his heirs and assigns that he will not convey or otherwise dispose of any lot in that block without restricting the building to be erected thereon to the building line as shown in the plat, save as to steps and platforms mentioned, which are not to extend to exceed ten feet over the building line; further covenanting forever to war-

Noel v. Hill.

rant and defend the title subject to the foregoing reservations, easements, restrictions, covenants and conditions. Lot 33 is the northwest corner lot of the block or subdivision.

The petition upon which the case was tried alleges that defendants Roland Hill, St. Louis Bill Posting Company and St. Louis Gunning Advertising Company erected or caused to be erected and are now maintaining on this lot 33, a large and unsightly wooden structure, extending from near the northeast corner of the lot, southwestwardly to near the southwest corner thereof, the structure being about 150 feet long, eighteen feet high and constructed of wooden planks fastened to wooden posts driven into the ground on the lot, and that defendants are employing the structure for advertising purposes, the exterior for signs and advertisements of various businesses and callings painted and posted thereon, and the lot thereby used and employed for the purpose of carrying on the business of renting space upon the exterior of this wooden structure to persons and corporations for advertising their business and calling, for hire and rent charged, demanded and received by defendants, the companies defendant being engaged in the advertising and bill-posting business, and that the exterior of the structure is now covered by large advertisements and announcements of the various firms and corporations who have rented or bought space from the defendant corporations for the purpose of displaying their signs and advertisements on the structure, and that defendants have been employing this structure for a lengthy period, the exact duration of which is unknown to plaintiffs, and the lot is thereby being used for trade and business in defiance and violation of the restrictions under which the same was conveyed to and is owned by the defendant Hill, and particularly in violation of the second paragraph of the restrictions prohibiting the lot or any portion thereof from being "used for

trade, manufactures, or business of any kind what-
ever.'' It is averred that the violation is continuous
and that defendants threaten to continue the use of it
for the advertising business in flagrant violation of
the restrictions and conditions in the deed; that the
employment of the lot as the site of the structure,
with signs and advertisements painted and posted
thereon, as before described, is a detriment and injury
to the property in the block and especially of the prop-
erty of these plaintiffs, it having been averred that the
several plaintiffs are owners of the lots in this same
block, all but one or two fronting on Maryland avenue,
and that they had all purchased and held under deeds
containing these same restrictions and covenants.
Averring that plaintiffs have no adequate or complete
remedy at law, they pray for an injunction against de-
fendants from so using and employing the lot as above
set out and from maintaining the wooden structure
thereon and from conducting the business of adver-
tising on the lot, and for general relief.

Defendant Hill, answering, denies generally all
the averments in the amended petition, excepting those
expressly admitted, qualified or explained. He ad-
mits that at the time of filing the petition he was and
still is the owner and in possession of lot 33 in the block
named, and that plaintiffs are the owners of lots de-
scribed in their petition, all of these lots being on
Maryland avenue except one which fronts on the north
side of Lindell avenue and is in this same block 3894.
Defendant further pleads that there is a misjoinder
of parties plaintiff and that the parties plaintiff re-
siding on Lindell avenue have no legal capacity to
sue and are unnecessary parties plaintiff. It is de-
nied that plaintiffs have correctly set out in their pe-
tition the true conditions and restrictions affecting
the lot. (We have in this statement followed the re-
strictions as contained in the deed; while the petition
does not set out the restrictions verbatim, we remark

in passing that we discover no discrepancy 'between the conditions as pleaded and those found in the deed itself.)

By way of cross-bill defendant Hill sets out the restrictions contained in the deed *in extenso* and then avers that in so far as they affect his lot they are "obsolete, inoperative, useless and void in that the neighborhood and surroundings wherein said lot is situated has so changed, and the conditions of said neighborhood since said restrictions were imposed has so changed that it is entirely a different character of neighborhood now than when said restrictions were imposed." This cross-bill goes on to describe the changed condition at great length, particularly averring that Euclid avenue, which is the west line of the block, has changed to a business street, with flats, apartment houses and stores; that billboards have been maintained on lots 30, 31, 32 and 33, which are the lots of three of the plaintiffs and of the defendant Hill, for many years; that the original deed creating the restrictions was made many years ago, date blank; that the deed from defendant's grantor to him is dated November 12, 1892, and contains the conditions and restrictions above set forth; that defendant's lot is a corner lot situated on the southeast corner of Maryland and Euclid avenues to the alley and that neither of the other corners on Maryland and Euclid are restricted nor is Euclid avenue; that paralleling the lot on Euclid avenue is a double track of street railway; that in front of the lot, on Maryland avenue, is a double track of street railway; that the Euclid avenue tracks have been laid since the lot was acquired by defendant and since the property was conveyed by the original grantor, who placed the restrictions on it; that immediately adjacent to the corner of the lot on Maryland and Euclid avenues is a double street railway crossing with switches forming the terminus of the Maryland ave-

nue line of railway; that the property opposite the lot on Maryland avenue on the northeast corner of Euclid avenue and Maryland is now built up with flats and stores and that flats and stores extend along Euclid avenue north to near an alley, and extend along the north side of Maryland avenue in front of defendant's lot; that said flats and stores were built out to the building line both of Maryland and Euclid avenues and have been erected since 1892; that the whole of the north side of Maryland avenue in front of block 3894 contains no restrictions whatever and is built up with flats and stores and the locality is rapidly changing and has changed since 1892 from a high class residence district to a business and apartment neighborhood in the immediate vicinity; that the character of the locality is so changed since the restrictions were imposed as to render it apparent that buildings of the class contemplated by the conditions and restrictions in the deed will not be built upon lot 33 or any of the other vacant lots in block 3894; that these conditions and restrictions impose an unjust charge against defendant's lot and if they are enforced the lots affected, and particularly defendant's lot, could not be profitably used or sold; that the presence of the street railway tracks, crossings, switches and terminals render it impracticable to erect a dwelling upon the lot and that it is practically destroyed for residence purposes and practically worthless for such purposes but that, freed from the incumbrance, it is of great value and easily saleable, while with the restrictions, it is not saleable, and if the restrictions and conditions are carried into effect it would substantially confiscate defendant's property and that it is unjust, oppressive and unfair to defendant, owing to the changed conditions to enforce any of the restrictions as regards his lot. Repeating practically these averments, it is further set up in this answer that these conditions and restrictions are perpetual and impose an everlasting

Noel v. Hill.

charge and incumbrance against the land; that all the restrictions and particularly the clause limiting the period of the restrictions are unreasonable and impossible of performance and therefore void and of no force or effect and that they constitute a perpetual incumbrance and charge on the lot and are in restraint of alienation; that owing to the changed conditions in the neighborhood it is inequitable, oppressive and unjust to enforce the restrictions and they should not be enforced; that defendant has no adequate remedy at law against the restrictions and is remediless in the premises except by the aid of this court; that if plaintiffs are allowed to proceed and maintain their suit they will institute further suits and harass and annoy defendant and he will suffer great and irreparable injury and damage. Wherefore, the premises considered, defendant Hill prays that he may be discharged with his costs; that the conditions and restrictions in so far as they affect lot 33 be cancelled and annulled and declared to be held of no binding force upon that defendant or his assigns and that the court by proper judgment and decree set aside, cancel and annul the restrictions and reform the deed so that those conditions and restrictions will have no further binding force or effect and be for naught held, and that the court by proper judgment and decree forever restrain the plaintiffs and each of them from everything in any manner interfering with defendant in the use or possession of the premises and that they be forever enjoined and restrained from bringing any other or further suits of any character whatever against defendant or any person holding under him or in any manner asserting the restrictions or in any way affecting the same and for general relief. No pleadings by the other defendants are in the abstract.

The reply was a general denial.

It may be said that the trial of the case developed practically the facts set out in the petition. Photo-

graphs which were used at the trial are submitted to
us and we have had the full benefit of them as well as
of the briefs and arguments of counsel and of oral
argument at the bar. It may. be as well to note here
that this city block in the city of St. Louis, which is
in what was called Welles' Subdivision, is bounded on
the north by Maryland avenue, on the south by Lindell
avenue, on the east by Taylor avenue and on the west
by Euclid avenue. The deeds and plats laying off
this block and subdividing it into lots call for much
more expensive buildings and a deeper building line
on Lindell avenue than on Maryland, and the parties
who are referred to as unnecessary parties to this
suit are owners of one of the lots fronting on Lindell,
on which a costly dwelling has been erected. The plat
and dedication of Welles' Subdivision, duly acknowl-
edged and recorded, was in evidence. It appears from
this plat that Maryland avenue in front of this sub-
division is 80 feet wide, Euclid avenue is sixty
feet wide, Lindell avenue is one hundred feet wide,
Taylor avenue is sixty feet wide, and there is an alley
twenty feet and two inches wide, running through this
block or subdivision, the alley 176 feet south of the
south line of Maryland avenue on Taylor; 176 feet and
a fraction south of the south line of Maryland avenue
on Euclid. The evidence showed that at the time of
the institution of this action a sign board extended
diagonally along this lot 33 from very near its north-
east corner to near the southwest corner and, accord-
ing to the testimony and as shown in the photographs
submitted to us, it was covered with advertising mat-
ter of various descriptions. All of the lots on the Mary-
land front of this block, with the exception of lot 33
and possibly one or two more, are occupied by resi-
dences, built by parties purchasing and holding under
deeds containing the restrictions before mentioned.
On the northeast corner of Lindell and Euclid there
is a large house occupied and used as a residence, that

lot running to the alley between Maryland and Lindell, and on the rear of the lot, but some distance east of Euclid, there appears to be a stable, garage or other outbuilding. Except this board fence there is nothing on lot 33. Lots 31 and 32 are occupied by a residence, the property of one of the plaintiffs. To the west of this block and across Euclid avenue is a private park or lawn, surrounding a large private residence. Immediately opposite the three west lots of this block and on the north side of Maryland avenue are a drug store, a barber shop and another building used for business purposes. Beyond these buildings and to the east, on the north side of Maryland avenue, are residences, possibly some flats. Along Euclid avenue from Maryland and running to the north one-half block or more are business and apartment houses. The corner north of Maryland and opposite and along the west line of Euclid avenue is vacant property. There does not appear to be any buildings on Euclid avenue other than these referred to north of Maryland and none whatever on the east side of Euclid avenue south of Maryland between Maryland and Lindell, save the dwelling house on the corner of Lindell and Euclid. What buildings are on Euclid south of Lindell is neither clear nor very material. So far as this block 3894 is now occupied and taken up, with the exception of this lot 33 and possibly one or two other lots, the whole of that block fronting both on Maryland and Lindell, and constituting what is called Welles' Subdivision, is occupied by modern residences, for the most part buildings costing from ten to fifty thousand dollars or more, used exclusively for residence purposes, one building to a lot. There are twenty-two lots on Maryland and eleven on Lindell in this block. While the lots on Maryland are fifty feet front, those on Lindell run from 105½ feet to ninety feet front. It is in evidence that double street car tracks run along Maryland and Euclid in front of this block on the

north and on the west. In the block on the north side of Maryland, west of this block and one hundred or more feet from the west line of Euclid avenue, is a high brick wall and from that wall west are expensive private residences until within one hundred or more feet of Kingshighway, when there is another wall. Between these two walls is what is called "Maryland Place," laid off somewhat as a park in front of the houses. On the south side of Maryland and in the block west of this city block 3894 are the grounds of the private residence heretofore referred to, with no buildings at all on Maryland, the stables and outhouses pertaining to the residence on it lying back something over one hundred and fifty feet south of Maryland avenue. The terminus of the car line on Maryland avenue is near Kingshighway and cars running out west on Maryland when reaching Euclid are switched north on Euclid then back again on to Maryland and so on west to the end of the line. The street railroad on both streets is operated by electricity. The corner building on the northeast corner of Euclid and Maryland is occupied as a drug store, as before stated. There was some testimony to the effect that the presence of the street car line, by reason of the noise made by the operation of the lines, tended to lessen the value of this property as residence property and there was some evidence tending to show that if this corner lot in controversy could be converted into business property that it would probably bring a higher price, be more valuable as business property, than as a residence corner. The evidence also showed that the advertising companies, who were co-defendants with the owner, paid defendant Hill for the use of the lot for the erection of these sign boards and were paid for space for the advertising matter which was posted or painted on them.

At the conclusion of the evidence the court entered up a decree, finding that the lot of defendant Hill was

subject to the restrictions set out in plaintiffs' petition and that the defendant Hill and the bill posting and advertising companies were at the time of filing the petition using the lot for the purpose of carrying on business, that is of displaying advertising for hire, and that that was done in violation of the restrictions covering the property in the block, whereupon the court adjudged and decreed that plaintiffs were entitled to the relief prayed for in their amended petition, and it perpetually enjoined defendants from maintaining the wooden structure referred to on this lot, and from carrying on the business of advertising upon the lot, and rendering judgment against defendants for costs of the suit, dismissed the cross-bill of defendant Hill. It is from this decree that defendant Hill has appealed.

The points of contention of counsel for appellant are practically those set out in the cross-bill which they filed, and we have set them out so fully in giving a summary of that cross-bill that it is unnecessary to repeat them. It may be conceded that each party gave in evidence the facts they relied on, and that the evidence as to the depreciation of the value of the property, as well as to its enhancement in value if the restrictions were removed, is conflicting. That conflict was determined by the trial court in favor of plaintiffs and we accept that finding as supported by the weight of the evidence, remarking however, that we do not consider the question of value as of any importance.

The matter of building restrictions is one that has been before this court and the Supreme Court of our State so many times that it may be said that the law governing it is clearly and firmly established. Counsel for appellant claim that building restrictions in conveyances of the fee are regarded unfavorably and are strictly construed, citing among other authorities in support of this, Scharer v. Pantler, 127 Mo.

App. 433, 105 S. W. 668. There, at page 437, Judge
NORTONI, who delivered the opinion of this court, says:
"The law favors the free and untrammelled use of
real property. Restrictions in conveyances of the fee
are regarded unfavorably and are therefore strictly
construed." Citing authorities in support of this
proposition, Judge NORTONI, however, continues:
"Nevertheless, proper building restrictions and other
limitations on the use of property of a character which
the law permits to be attached to land, in such a sense
as to restrict the use of one parcel thereof in favor of
another, will be enforced in a proper case in courts of
equity, upon equitable grounds, in favor of or against
the party designed to be benefited or burdened there-
by," citing many authorities in support of this. One of
the cases cited is that of Sanders v. Dixon, 114 Mo. App.
229, 89 S. W. 577, which is a very full exposition of the
law and compilation of cases on the subject. [See, also,
Kitchen v. Hawley, 150 Mo. App. 497, 131 S. W. 142.]
What is said in Scharer v. Pantler, supra, concerning
building restrictions, is fully borne out by what our
Supreme Court has said in King v. St. Louis Union
Trust Co., 226 Mo. 351, 1. c. 365, 126 S. W. 415, where
Judge BURGESS refers to them as "equitable ease-
ments" which run with the land.

Nor is it true, as contended by counsel for
appellant, that these covenants create a perpe-
tuity or are perpetual restrictions either against
the use or occupation. There is no restraint
whatever on the right of alienation. The deed,
in terms, provides that after the expiration of
twenty-five years from date of the deed, by consent of
a majority of the then owners of the lots, all of the re-
strictions specified and enumerated may be removed.
Irrespective of this, there is nothing in the deed re-
stricting the owners of all these lots from at any time,
by consent of all, removing them. Hence an estate in
perpetuity is not created by the deed. It is only when

there are no persons in being who can convey an absolute fee in possession, discharged of a future use or estate, that there is a perpetuity. [Stevens v. Annex Realty Co., 173 Mo. 511, 73 S. W. 505.] Moreover, it is said in the case last above cited (1. c. 519): ''The law has always been that a vendor of land may restrict its use in a particular way, provided such restrictions are not against public policy and that a covenant of this character runs with the land when either the liability to perform it or the right to enforce it passes to the assignee or vendee of the land if he has notice of the covenant.'' It is furthermore said in this case of Stevens v. Realty Co., quoting with approval from what has been said by the circuit judge who tried the case: '' 'Indeed, it is not essential to the enforcement of restrictions and servitudes of the character here in controversy that they should run with the land. It is sufficient that they be reasonable and not against public policy, and that the parties against whom they are sought to be enforced have notice, actual or constructive, of the condition or restrictions. A purchaser with notice of restrictions, servitudes or stipulations is bound to observe them although they do not run with the land at law.' ''

One of the principal contentions of counsel for appellant is, that these restrictions are invalid and void in that they are not imposed in conformity to a general, uniform, plan of improvement and affect only a single block and only one side of the street of that block, and those counsel contend that in order to be valid and binding these building restrictions must conform to a general and uniform plan of improvement, designed and adapted for dwelling houses, ''and must affect both sides of the street and the street and the neighborhood adjacent in conformity to said general plan and design of improvement.'' We are unable to appreciate this argument or, speaking frankly, to understand exactly what counsel mean. We are cited

to no authority which holds that a owner of property abutting on a street, a public street or a thoroughfare, can lay out no improvement and impose no building restrictions on the part laid out, unless he happens to own the property on the other side of that public street. If there is any such case in judgment, it has not been called to our attention. We are unable, by any line of reasoning, to accept it as having even any plausibility. Our personal knowledge, if we may be permitted to avail ourselves of that, is directly contrary to this assertion. There are scores of instances in the city of St. Louis in which building restrictions are operative on one side of a public street and do not extend to the other side. This is the first case in which we have ever heard the point made, that by reason of the reservation not extending across a street, there is a lack of a uniform plan. Looking at the reported cases, any quantity of them show that street lines bounded the reserved territory. Counsel have minconstrued the meaning of words and terms; the ''general uniform plan of improvement,'' referred to in the cases where building restrictions have been under consideration, is the general uniform plan extending over the tract subjected to the restrictions. Whether it contains more or less feet or acres has nothing whatever to do with the validity of the restrictions. The evidence in this case conclusively shows that ''Welles' Subdivision'' constituted and comprised this city block, then under one ownership. That block was subdivided into lots and the restrictions imposed in furtherance of, and in conformity to, a general, uniform plan, covering, including and governing all improvements on that block. Even the case of Coughlin v. Barker, 46 Mo. App. 54, a case so often referred to and so greatly relied on by counsel for appellant, presents an instance in which the owner of about 1584 feet of property, who desired to make this property a high class residence property, and

with the view of enhancing the price which he should obtain for the lots, determined to insert certain building restrictions in the deeds of lots conveyed by him. While it was held in that case that the owner had not been successful in attaching the building restrictions as covenants running with all the land in this 1500 feet, and had abandoned his general scheme, and endeavored to enforce it as against one or two lots, no suggestion is made that the restrictions were non-enforceable by reason of the fact that they were attempted to be applied to one or two lots, but the decision is, that they had not been saved as to those particular lots. Before leaving this case of Coughlin v. Barker, it is as well to say that it affords no support whatever to any of the contentions made by appellant in this case; its facts and the points there in decision have no bearing on the case now before us. Here there is no question whatever that this appellant purchased and holds title to his lot subject to these restrictions: there the decision is, that the defendant did not. Instead of supporting the contention of counsel for appellant in this case, Coughlin v. Barker contains many declarations of the learned judge who wrote it, which are directly against the whole theory upon which they are here defending.

It is argued that the plan of making this a residence district has failed and that in consequence thereof the restrictions have fallen and become inoperative. The testimony in the case is the best answer to this proposition. The whole block, save two or three vacant lots, one of these that here involved, is built up and occupied with private dwellings, both on Maryland and Lindell, in precise conformity to the general plan upon which the subdivision was laid out. No attempt was made by the party who laid out this subdivision, or the owners of the lots other than appellant, to remove or change or abandon the general plan. No pretense was ever made by any one that the restrictions

extended across either Maryland or Euclid avenues. They were confined strictly and distinctly to this particular block. So there has been no failure whatever on the part of the dedicator in the carrying out of the general plan upon which he entered to make this block exclusively a residence block. He did not attempt to make it "an exclusive residence block," as some of the questions of counsel to witnesses seem to imply, but he was making it exclusively a residence block; a very different proposition. If the contention of appellant could be carried out and he be allowed to erect a business house or to continue the use of this lot as a lot on which the sign boards advertising business are to be erected, and doing that as a business for hire, it is true that the object had in view by the dedicator would be destroyed, perverted and overthrown. The very purpose of the restrictions would be defeated. It is to prevent that very act and that very thing happening that this suit was brought. The purpose of the restrictions is always to be kept in mind. [Godfrey v. Hampton, 148 Mo. App. 157, l. c. 162, 127 S. W. 626.]

We have heretofore held in Spahr v. Cape, 143 Mo. App. 114, 122 S. W. 379, that the mere fact that lots subject to building restrictions created by covenants in the deed by which they were limited to use for residence purposes only, became more valuable or suitable for business than for residence purposes, is not in itself any ground justifying a court of equity in overturning and annulling such covenants.

We furthermore held in that case that the mere presence of street railway tracks in a street will not turn it from a residence into a business thoroughfare.

We furthermore there held that it was beyond the power, even of the grantors of the subdivision or the owners of lots therein, to change the building restrictions on lots without the consent of all who had pur-

chased under covenants providing for such restrictions.

In point of fact, we have so thoroughly covered practically all of the points now made in this case and have there so fully referred to the controlling authorities on the subject of building restrictions, that it is unnecessary to further elaborate them here. The decision in that case practically meets every substantial point made in this.

That the erection of these billboards, authority to do which was granted by the appellant Hill to the advertising companies for a consideration paid him, and the sale or letting out of space on these billboards for hire, the space occupied with advertising matter, was carrying on business on the lot, using it for business purposes, is beyond question. This much more clearly and distinctly than was the case of Semple v. Schwarz, 130 Mo. App. 65, 109 S. W. 633, where it was held that the placing of a physician's sign on the outside of a building, in connection with the reception of patients for treatment in the house, was carrying on business.

In the recent case of Gunning Advertising Company v. City of St. Louis,——Mo.——, ——S. W.—— (not yet officially reported), our Supreme Court has held that it was within the power of the city of St. Louis, by ordinance, to regulate the construction and erection of these signboards. Erecting and maintaining and using such billboards is distinctly recognized as a business. The court throughout its opinion treats these sign boards and their use as a business; as involving the doing of business; treats them as erections made for the purpose of carrying on business. The great contention of the advertising company in that case was that the city ordinance regulating the size of these, was an improper interference by the city, with its lawful business. Our Supreme Court there held, that while advertising, as carried on on these

billboards, "is a legitimate and an honorable business," nevertheless it is a business; a business not unaccompanied by evils; and that like all business it can be regulated in its character. It will not, therefore, do to say that these signboards as erected and as used were not means and instrumentalities falling within the domain and designation of mercantile business and that the occupation of this lot by this means and instrumentality was not the occupation of it for business purposes. Clearly within the intendment, the letter, the spirit of the deed, the erection and maintenance of any such structure was a violation of the terms and restrictions of the deed under which the appellant Hill holds title to this property.

We are told that the court committed error in dismissing the cross-bill which the appellant interposed, wherein he asked for cancellation of these restrictions with reference to building. From what we have said, it is apparent that no such relief should have been granted. Parties owning these lots in this subdivision are entitled to the protection of these restrictions in their deeds. The appellant here bought with full knowledge and notice of these restrictions; he had actual notice, personal knowledge when he accepted his deed. Our Supreme Court, in the case of King v. Trust Co., supra, holds that where the deed to plaintiff's grantor recites the building restrictions and recites that they are imposed upon each lot in the subdivision for the benefit of every other lot therein, the defendant, claiming through the same common grantor and who took a deed for other lots in the subdivision subsequent to the time the deed to plaintiff's grantor was recorded, containing no such recitals, still, under our statute, is chargeable with constructive notice that his lots were burthened with the restrictions imposed by the deed to plaintiff's grantor. This is a more extreme case than the one before us, and certainly dis-

poses of any claim that this appellant may have to the consideration of a court of equity, so far as the question of notice is concerned.

Counsel argue with great strenuousness that these restrictions are hurtful to business and restrict the business area, one or more of his witnesses going so far as to say that Vandeventer Place in the city of St. Louis, for instance, would be much more valuable for business purposes than for private residences. That may be, but it is a kind of utilitarianism with which we have no concern. Judge WOODSON, writing the opinion of our Supreme Court in the Gunning case, supra, the decision concurred in by all but one member of that court, there says that in his individual opinion "this class of advertising as now conducted is not only subject to control and regulation by the police power of the State (as a business), but that it might be entirely suppressed by statute, and that, too, without offending against either the State or the Federal Constitution." The money or commercial value of a thing is not always a test of its worth. There are some things in the life of a city and of men that are not to be measured by mere money. The man who looks at Niagara Falls, or the Yellowstone, or Yosemite Parks, with the mere idea of measuring the value of the one by its water power and of the others by the number of feet, board measure, in the grand trees there found, has lost a good deal out of life.

It is to the glory of St. Louis that she is pre-eminently not only a city of homes, but "a city of homes beautiful." No factor has so much contributed to this, not only in reputation but as a fact, as has the great number of restricted blocks, restricted residence districts. They are scattered all over this great city. This court, as well as our Supreme Court, has at all times recognized that while these restrictions may be, to some extent, a restraint on the use of private property, they are, considered in their larger aspect, of

great benefit to the community at large, and instead of looking at them with a jealous eye and attempting to pick flaws in the covenants creating them and to construe them out of the deeds, have always held that they are to be preserved and observed and sustained as long as that can be done without violation of the rights of contract and unduly restraining the right of alienation and without dispossessing any man of that which by deed and contract he is entitled to hold.

We can conceive of nothing that would be more evasive and contrary to the spirit of these deeds, which is to make all this block suitable, sightly and pleasant for residence purposes, than to permit the erection of these large advertising fences or boards along, over and across them.

Our attention is called to the fact that there is here a perpetual injunction against infringement upon the building restrictions contained in these deeds. We would not reverse for this even if we held it error but could take the same course that was taken by this court in Semple v. Schwarz, supra, by modifying the injunction. We prefer, however, to have the injunction amended by the circuit court, by adding to it, after the words "and are further enjoined from carrying on the business of advertising upon said lot," these words: "Subject to the right of the owners of a majority or greater part of the frontage on Maryland avenue within city block 3894, by written consent, signed and acknowledged by them, to alter, modify or repeal the restrictions in the deeds under which they now hold, at any time after twenty-five years from the date specified in the deed, so far as concerns the lots in said block fronting on Maryland avenue." The judgment of the court, otherwise than as above being affirmed. The cause is remanded with directions as above and at the costs of the appellant. *Nortoni* and *Caulfield, JJ.,* concur.