**STEVE VOGLI & CO., a corporation, Appellant,**

v.

**John B. LANE et al., Defendants,**

**Walter L. Saloga et al., Respondents.**

No. 51793.

Supreme Court of Missouri, Division No. 2.

Sept. 12, 1966.

Broadview Heights consists of two separate but adjoining subdivisions of land in Kansas City, Missouri, containing a total of 35 lots. Plaintiff is the owner of lots numbered 75 through 80. The other 29, through a division of some lots, comprise 31 homesites, each in a separate ownership. All the lots were subject to the terms of a Declaration of Restrictions dated and recorded on February 13, 1950, which among other things limited their use to single family residence purposes. Plaintiff's six lots are the only ones in the Broadview Heights not improved with single family residences. Paragraph 16 of the Declaration of Restrictions contains the following provisions respecting the term, extension and release of such restrictions:

"All of the restrictions and covenants herein set forth shall continue and be binding upon the undersigned and upon his heirs and assigns for a period of twenty-five (25) years from the date that this instrument is filed for record in the office of the County Recorder of Jackson County, Missouri, and shall automatically be extended thereafter for successive periods of twenty-five (25) years, provided, however, that the owners of the legal title to the aforesaid lands having more than fifty (50) percent of the front footage of said lands may release all of the lands hereby restricted from any one or more of said restrictions and covenants, and may release any part of said land from any restrictions and covenants created by deed from the undersigned at the end of the first twenty-five (25) year period, or at the end of any successive twenty-five (25) year period thereafter by executing and acknowledging an appropriate agreement or agreements in writing for such purpose and filing the same for record in the manner then required for the recording of land instruments, at least five (5) years prior to the expiration of the first twenty-five (25) year period, or at least five (5) years before the expiration of any twenty-five (25) year period thereafter; and further

Kusnetzky & Partin, William C. Partin, Kansas City, for appellant.

Raymond, West & Cochrane, and Carrol C. Kennett, Kansas City, for respondents.

STOCKARD, Commissioner.

Plaintiff has appealed from an adverse judgment entered in his suit to determine the validity of a purported amendment to restrictions on its land. The stipulated difference in value of the land brought about by the continuance or modification of the restrictions exceeds our minimum jurisdictional amount. See Eilers v. Alewel, Mo., 393 S.W.2d 584.

provided that the owners of the legal title of the lands having more than seventy-five (75) percent of the front footage of the land described herein may after fifteen (15) years from the date of this instrument, by executing and acknowledging an appropriate agreement and filing the same for record, as outlined above, release any one or more of the restrictions or covenants as above mentioned."

On March 24, 1964, which was before plaintiff acquired title to its six lots, all the owners of all the lots in Broadview Heights affected by the Declaration of Restrictions, executed and recorded an instrument entitled "Amendment of Restrictions" in which it was stated that the restrictions contained in the Declaration of Restrictions "shall be and are hereby amended" to provide seven separate restrictions applicable only to Lots 75 through 80, as follows:

"1. Lots 75 to 80, both inclusive, Broadview Heights, a subdivision in Jackson County, Kansas City, Missouri, may be improved, used or occupied for either single family or two family (duplex) residence purposes, but no flat or apartment houses, though intended for residence purposes may be erected thereon.

"2. No residences erected on the aforesaid lots shall be required to have any frontage on Bannister Road and none shall be nearer than fifty (50) feet to Bannister Road.

"3. All residences erected on the aforesaid lots shall contain a minimum of two thousand (2,000) square feet living space area per residence building.

"4. All residences erected on the aforesaid lots shall have wood shingle roofing and be constructed with exterior front walls either partially or fully brick.

"5. There shall be a maximum of eight (8) residences erected or maintained on the aforesaid lots.

"6. Any duplex residences erected upon any portion of said real estate shall have not more than one (1) front door or entrance way visible from the exterior thereof to serve both portions of said duplex.

"7. All of the restrictions heretofore imposed upon the aforesaid lots for their use shall continue in full force and effect except as herein amended."

Plaintiff acquired its six lots on October 7, 1964, and desired to develop the land for garden type apartments. Thereafter, plaintiff and the owners of 24 other lots executed an instrument entitled "Modification and Amendment to Restrictions, which by its terms was to become effective February 15, 1965, more than fifteen years after the date of the Declaration of Restrictions. This instrument recited that the undersigned "being all of the owners of the legal title to more than 75 per cent of the front footage of lots 46 to 80, both inclusive, * * * desire that the Declaration of Restrictions heretofore imposed upon all the aforesaid lots dated February 13, 1950, * * and the amendment to said Declaration of Restrictions dated March 24, 1964, * * * be amended, changed and deleted as hereinafter set out, insofar as said restrictions and the amendment thereto affect Lots 75 to 80, both inclusive, * * · *." It was then provided that the Declaration of Restrictions and the Amendment of Restrictions "are hereby amended, deleted and changed as follows, to wit:

"That Lots 75 to 80, both inclusive, may be improved, used or occupied for duplexes and apartment houses; that there shall be no restriction as to the side building line and the front building line shall set back a minimum of 50 feet from Bannister Road. Each apartment shall have a living area of not less than 750 square feet per unit and the exterior walls of each building shall be constructed either partially or fully with brick or similar material. There shall be no restrictions as to the use of the front, frontage

of buildings or land appurtenant to their use or architectural design."

Subsequently, a petition was circulated among the owners of the lots in the subdivisions and signatures were obtained to a "Petition" wherein it was stated as follows: "KNOW ALL MEN BY THESE PRESENTS: That whereas the undersigned being the owners of the legal title to certain Lots in Broadview Heights, a subdivision in Kansas City, Jackson County, Missouri, after giving consideration to the proposal as presented by Mr. Steve Vogli, representing Steve Vogli & Company, wherein our area restrictions as filed of record at Jackson County, Missouri, be amended to permit the building of apartments on Lots 75 to 80, both inclusive; do hereby disapprove said proposal."

Plaintiff filed this suit seeking a declaratory judgment that the "Modification and Amendment to Restrictions" was a valid agreement to modify the original Declaration of Restrictions, and that the modification became effective on February 15, 1965. The named defendants were those lot owners who signed both the proposed modification and the petition of disapproval. All the named defendants defaulted except the owners of one lot who answered and challenged the validity of the Modification and Amendment to Restrictions. The trial court found that by the "express terms of the original restriction agreement 'any one or more of the restrictions' applicable to all the lots could be released by the requisite number of property owners, but there was no provision authorizing the partial release of a restriction for only a part of the area," and that "a partial release of the restrictions as to a few lots is not authorized by the original restrictive agreement and it is therefore void." It was then ordered, adjudged and decreed that "the Declaration of Restrictions of February 13, 1950, remains in force and effect in accordance with all its terms and provisions."

■ On this appeal plaintiff-appellant asserts that both the Amendment of Re-

strictions executed by all the owners of all lots, and the Modification and Amendment to Restrictions executed by the owners of 75 percent of all the lots are valid. No brief has been filed in this court by or on behalf of the defendants, and while a respondent is not required to file à brief, the practice of not doing so has been characterized as "neither helpful nor commendable." Holman v. Fincher, Mo.App., 403 S.W.2d 245, 249. See also Quinn v. St. Louis Public Service Company, Mo., 318 S.W.2d 316, 319. We note that the owners of seven lots who did not sign the Modification and Amendment to Restrictions, and the owners of lots who did sign that instrument but who did not sign the "petition" have not been named as defendants, either individually or as members of a class.

■■ Restrictive covenants running with the land, while in effect pursuant to the terms of the instrument creating them, may be extinguished, modified or changed by mutual agreement between all of those subject to the restrictions and all of those entitled to enforce them, and in making such modification or change the restrictions need not be uniform as to all lots but may contain any pattern of restrictions which could have been contained in the instrument originally creating the restrictions. See generally, 20 Am.Jur.2d Covenants, Conditions and Restrictions § 270; 21 C.J.S. Covenants § 76; Restatement, Property, § 556; 3 Tiffany on Real Property 3d Ed., § 870; Hirsch v. Hancock, 173 Cal. App.2d 745, 343 P.2d 959; Hopkins v. Smith, 162 Mass. 444, 38 N.E. 1122, 1123; Farmer v. Thompson, Tex.Civ.App., 289 S.W.2d 351, 355; Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 278 S.W. 398, 408; Noel v. Hill, 158 Mo.App. 426, 138 S.W. 364, 369. There is nothing in the record of this case to show that anyone other than those who executed the Amendment to Restrictions had any interest in the lands affected or was entitled to enforce the restrictions. We conclude and hold that as between the parties and upon the issues presented, the trial court erred in ruling

that notwithstanding this modification and change, the original restrictions imposed by the instrument dated February 13, 1950, remained in full force and effect as to lots 75 through 80.

We consider now the validity of the Modification and Amendment to Restrictions dated February 15, 1965. In doing so we shall keep in mind that the law favors the free and untrammeled use of real property, and that restrictions on the fee are regarded unfavorably and are strictly construed. Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W.2d 911, 913, 81 A.L.R. 1039. Also, when there is substantial doubt as to the meaning of the wording of any restriction such doubt should be resolved in favor of the free use of any property. Chiles v. Fuchs, 363 Mo. 114, 249 S.W.2d 454; Barnes v. Anchor Temple Association, Mo.App., 369 S.W.2d 893. In this case, any substantial doubt as to the meaning of language in the Declaration of Restrictions pertains to the release provisions of paragraph 16, and such doubt should be resolved, when permissible under the language used, in favor of permitting a less restrictive use of the property.

The result of the amendment of March 24, 1964, was that the provisions of that amendment were incorporated into and became a part of the original Declaration of Restrictions with the same force and effect as though originally written into that instrument with a postponed effective date. Therefore, after March 24, 1964, the restrictions contained in the Declaration of Restrictions, as amended, were of three general classes: first, certain restrictions were applicable to all lots; second, certain other restrictions were applicable to all lots except lots 75 through 80; third, those restrictions contained in the Amendment to Restrictions and numbered 1 through 6 were applicable only to lots 75 through 80. The 1964 amendment left in force all the provisions of the original Declaration of Restrictions not specifically amended, and

therefore the restrictions, as amended, continued to be subject to the release provisions contained in paragraph 16 of the original Declaration of Restrictions.

Paragraph 16 of the Declaration of Restrictions provided that after fifteen years from February 13, 1950, "the owners of legal title of the lands having more than seventy-five (75) percent of the front footage of the land described herein may * * * by executing and acknowledging an appropriate agreement and filing the same for record, * *, * release any one or more of the restrictions or covenants as above mentioned." After March 24, 1964, the general class of restrictions applicable only to lots 75 through 80 were included in the term "any one or more of the restrictions or covenants as above mentioned," and fifteen years after February 13, 1950, any one or more of those restrictions could be released by the owners of the legal title of the lands in Broadview Heights having more than 75 percent of the front footage of the land. Also, this authority to release one or more of the restrictions included the authority to release any one or more of the restrictions in part, that is, by releasing a restriction so that it was in part retained, the retained provisions being less restrictive on the use of the land than the original restriction. There is no contention by respondents that if the owners of 75 percent of the front footage could release the restrictions applicable only to plaintiff's six lots, they could not do so in the terms and with the effect provided for in the Modification and Amendment to Restrictions. We conclude that by the Modification and Amendment to Restrictions dated February 15, 1965, the owners of the required amount of front footage released in its entirety, or released in part, "one or more" of the restrictions "as above mentioned" as to every lot to which the restrictions affected were applicable.

In view of the record, and the absence of a brief by respondents, we have no way of knowing what authorities were relied

upon by either the respondents or the trial court. However, Cowherd Development Co. v. Littick, 361 Mo. 1001, 238 S.W.2d 346, must be discussed. In that case restrictions for a period of twenty-five years could be "extended as to any or all of said restrictions for additional periods not exceeding 25 years each, by owners of the majority of the front feet of said Addition". It was held that the extension clause "did not authorize owners of a majority of front feet in the addition to extend the restrictions as to a part of the lots for 25 years and to release them as to others." The distinguishing feature of that case is that all the restrictions applied uniformly to all lots. In the pending case, after the amendment of 1964 certain restrictions applied to all lots except lots 75 through 80, and certain other restrictions applied only to these six lots. Therefore, under the language of paragraph 16 of the original Declaration of Restrictions the right of the owners of 75 percent of the front footage to release "any one or more" of the restrictions "above mentioned" included the right to release in whole or part the separate restrictions applicable only to the six lots and which limit their use to "single family or two-family (duplex) residence purposes."

This case was ruled in the trial court on a motion filed by plaintiff for a summary judgment in which the defendants did not file a written joinder. The judgment of the trial court was in favor of defendants on the merits. However, in view of our conclusion that the owners of 75 percent of the front footage of the subdivisions could after 15 years release one or all of the restrictions applicable only to the six lots of plaintiff, there is presented the issue of whether they have done so. As previously noted, the Modification and Amendment to Restrictions was executed by the owners of lots having the required amount of front footage prior to the expiration of the 15-year period, and in the instrument it was stated that the "parties have hereunto set their hands to become effective February 15, 1965." We have no doubt

that this constituted a valid agreement, the mutual promises constituting the consideration, that on February 15, 1965, the amendment was to become effective when acknowledged and recorded according to the terms of paragraph 16 of the Declaration of Restrictions. Subsequent to the execution of the Modification and Amendment to Restrictions the owners of seven lots signed the so-called "petition" wherein they said that they then did "disapprove said proposal." It may be that the death or legal disability of a person who had signed the Modification and Amendment to Restrictions before February 15, 1965, would "revoke" his approval, but it was stipulated that none of those signing the instrument had died, conveyed his property or suffered any legal disability. There is no contention of fraud, misrepresentation, or mistake, and no reason is advanced why the agreement contained in the Modification and Amendment to Restrictions should not be considered to be valid and enforceable by the courts.

In plaintiff's petition it was pleaded that 75 percent of the owners of the front footage could and did release the restrictions applicable to plaintiff's six lots. Defendants pleaded no affirmative defense. In its brief to this court plaintiff assigns as a point relied on not only that the release could be made but also that it was done. As previously noted, defendants-respondents have filed no brief in this court. From plaintiff's brief and from our research we find no compelling reason why the agreement entered into by the owners of the required number of the front footage should not be enforced. Certainly defendants have advanced no reason even though they knew the issues were before this court. Under these circumstances, and within the purpose and spirit of Civil Rule 83.13, V.A. M.R., which provides that on appeal all issues should be disposed of when possible, we conclude and hold that between the parties to this suit the Modification and Amendment to Restrictions constituted a valid and enforceable agreement between the parties thereto, and that there was no

effective cancellation or withdrawal from that agreement by the owners of seven lots who subsequently signed the "petition" expressing disapproval of plaintiff's proposal for use of the land.

The judgment of the trial court is reversed, and the cause remanded with directions that the trial court enter a judgment in accord with the views here expressed.

BARRETT, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

EAGER, P. J., and FINCH, DONNELLY and STORCKMAN, JJ., concur.