SAMUEL B. HOPKINS *vs.* SUSAN M. SMITH & others.

Dukes County.　　October 22, 1894. — November 30, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Equitable Easement — Deed — Restrictions — Assignment of Possibility of Reverter after Breach of Condition Subsequent.*

The owner of a tract of land divided it into lots, each of which he conveyed subject to the conditions and restrictions that "the grantee shall within one year from the date hereof cause to be erected on the premises granted a dwelling-house to be exclusively used as a residence for a private family; and no other buildings except the necessary outbuildings requisite and to be used exclusively for domestic purposes shall ever be erected thereon." · *Held,* that these conditions and restrictions were inserted for the benefit of purchasers who took deeds subject thereto, and that they could be enforced in equity by and against such purchasers and their grantees. .

The right of entry on breach of condition subsequent cannot be assigned to a stranger, and if conditions and restrictions in deeds are for the benefit of purchasers and their grantees, they cannot be released to a subsequent purchaser or his grantee without the assent of the other purchasers or their grantees for whose benefit the restrictions were imposed.

BILL IN EQUITY to restrain the defendants from the use of their premises for business purposes in violation of the restric-

tions of a deed. Trial in the Superior Court, before *Braley*, J., who found the following facts.

On August 3, 1867, the Oak Bluffs Land and Wharf Company, being seised in fee of a tract of land in that part of Edgartown now comprised in the town of Cottage City, caused the same to be laid out into house lots, streets, avenues, and parks, according to a plan, and to be placed upon the market for sale, under a form of deed prepared by the company, and used by it in all its conveyances of such lots.

On August 18, 1868, the company sold lot numbered thirty-one on the plan to one Cornell, and on December 10, 1868, sold lot twenty-nine to one Lovell. These lots adjoined, and the westerly line of lot thirty-one and the easterly line of lot twenty-nine coincided. The deeds of the lots were similar in form, and contained in the granting part the following clause: " This conveyance is made upon the following conditions, the non-fulfilment or breach of any one of which shall work a forfeiture of the estate hereby conveyed, and 'reinvest' the same in the grantor, viz.: the said grantee shall, within one year from the date hereof, cause to be erected on the premises granted a dwelling-house to be exclusively used as a residence for a private family; and no other buildings except the necessary outbuildings requisite and to be used exclusively for domestic purposes, shall ever be erected thereon; and the said grantor shall have the refusal of said granted premises whenever offered for sale by the said grantee, their heirs or assigns."

By mesne conveyances lot thirty-one vested in the plaintiff, and lot twenty-nine in the defendants, and all mesne conveyances as to each lot referred to the restrictions contained in the deeds of the company to Cornell and Lovell. Dwelling-houses for private families were built on each lot, and were occupied as such at the time of the filing of the plaintiff's bill. Other lots were from time to time sold and conveyed by the company to other purchasers, subject to like conditions; and dwelling-houses were built thereon. In a few instances the conditions were modified, but in none where a lot was sold for purposes of residence was the condition omitted that it should be used exclusively for the erection of a dwelling-house for a private family.

The company in many instances, after the sale of its lots, released to purchasers its right to enforce the condition as to dwelling-houses, and its exclusive use for a private family, but no such release was ever made as to lots twenty-nine and thirty-one.

On October 9, 1882, the company conveyed to one Landers " all the right, title, and interest of said company in and unto the following tracts of land," including therein lot twenty-nine, " to have and to hold the granted premises, with all the privileges and appurtenances thereto belonging, to the said George M. Landers, trustee, his successors and assigns, to their own use and behoof forever."

By a declaration of trust, executed on March 20, 1884, Landers, after reciting the release to him by the company, and that several of the parcels of land described therein had theretofore been conveyed by the company to sundry purchasers by deeds imposing conditions and restrictions upon their use and enjoyment, and that the release was given to him as trustee by the company for the further protection of certain persons (not parties to this suit), owners of lots included in the premises described in the release, or in the immediate vicinity thereof, with full power and authority to insist upon and enforce the conditions and restrictions contained in the original deeds as fully as the company might have done had the release been given, declared that he held whatever right, title, and interest and authority he had acquired by said release deed in trust for the benefit and for the protection of the persons previously named, and that he had " no right without the consent of all the beneficiaries above named, or their assignees or legal representatives, to aliene or convey the title acquired by me by said release deed, or to discharge any lot or persons from the conditions and restrictions imposed by said original deed above referred to, or any of them, and that I will not undertake so to do."

On March 29, 1893, Landers, in accordance with the terms of the declaration of trust, released lot twenty-nine to one Pierce, who, on October 15, 1893, released the northerly half thereof to William E. Tanner, together with all his right to enforce the conditions and restrictions contained in the original deed of the

Oak Bluffs Land and Wharf Company so far as it applied to that portion of the lot.

It did not appear that the owners of lots twenty-nine and thirty-one, or their successors in the title, or the owners of other lots, knew of or assented to the release of conditions by the company, or of the deeds from it to Landers, or from him to Pierce.

In July, 1894, Tanner, with the knowledge and assent of the other defendants, used the northerly part of lot twenty-nine for the storage, repair, sale, and letting of bicycles, and was publicly trading thereon, thereby causing annoyance to the plaintiff, and injuring the use and enjoyment of his property.

The conditions and restrictions that the lots should be used exclusively as a residence for a private family, and that no public trading should be there carried on, were reasonable and proper.

The judge entered a decree restraining the defendants from using lot twenty-nine, or any part thereof, or the buildings thereon, for any purpose whatever except that of a dwelling-house to be exclusively used as a residence for a private family; and the defendants appealed.

*C. G. M. Dunham*, for the defendants.

*B. T. Hillman*, (*F. D. Allen* with him,) for the plaintiff.

FIELD, C. J. We think it plain, on the findings of fact by the court, that the conditions and restrictions in the deeds from the Oak Bluffs Land and Wharf Company, under which the plaintiff and the defendants claim, were inserted for the benefit of purchasers from that company, who took deeds subject to these conditions and restrictions, and for the benefit of the grantees of such purchasers, and that therefore the restrictions can be enforced in equity by and against such grantees. *Jackson* v. *Stevenson*, 156 Mass. 496. *Hano* v. *Bigelow*, 155 Mass. 341. *Collins* v. *Castle*, 36 Ch. D. 243.

We are not called upon to consider what the right of the company would have been to convey the estates free from the conditions and restrictions, if the company had entered for breach of condition. The company has not taken advantage of the breach, if it could do so. The right of entry on breach of condition subsequent cannot be assigned to a stranger, and

if the conditions and restrictions were for the benefit of pur-
chasers and their grantees, these conditions and restrictions
could not be released to a purchaser or his grantee without the
assent of the other purchasers or their grantees, for whose bene-
fit they were imposed. *Rice* v. *Boston & Worcester Railroad*,
12 Allen, 141. *Trask* v. *Wheeler*, 7 Allen, 109. *Guild* v. *Rich-
ards*, 16 Gray, 309. Gray, Rule against Perpetuities, § 282.

*Decree affirmed.*