CASE 40—PETITION EQUITY—MARCH 12.

## McMurtry v. Phillips Investment Co., Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. DEEDS—RESTRICTIONS AS TO IMPROVEMENTS.—A restriction in a deed to a lot that "the property herein conveyed shall be used for residence purposes only," does not prohibit the erection of a building thereon containing flats, each of which is to be complete for the purposes of housekeeping, although there is to be in the basement of the building a large dining-room to be used by the occupants of the building, if desired, as a public, or semi-public, restaurant.

SIMRALL, BODLEY & DOOLAN FOR APPELLANT.

1. The covenants embodied in the several deeds to lots in St. James Court subdivision, without regard to extraneous circumstances, prohibit the erection of the building proposed by appellees. Gillis v. Bailey, 21 N. H., 156, 157.

2. In construing this covenant the court must look to surrounding circumstances in order to ascertain the meaning of the parties. 1 Jones on Law of Real Property, sec. 748; Gillis v. Bailey, 21 N. H., 156, 157; Hutchinson v. Ulrich, 145 Ill., 336.

3. Where the owner of a tract of land divides it up into building lots for sale, pursuant to a building scheme or residential plan, which is published to the world by him, and on the faith of the integrity of that plan purchasers are induced to buy lots in the subdivision, they thereby acquire an interest in all the details.

of that residential plan or building scheme, whether it is established or proven by matter of deed or by matter *in pais*. 1 Jones on Law of Real Property, secs. 737, 744, 745, 748, 771, 735, 769, 772, 780; Pomeroy's Eq. Juris., secs. 688, 689, 1295, 1342 and notes; Talmage v. East River Bank, 26 N. Y., 105-107; 2 Duer, 618; Beals v. Case, 138 Mass., 138; Coughlin v. Barker, 46 Mo. App., 54; Maxwell v. East River Bank, 3 Bosworth, 145; Sharpe v. Roper, 110 Mass., 385; Parker v. Nightingale, 6 Allen, Mass., 347; Fisher v. Beard, 32 Iowa, 353; Jeffries v. Jeffries, 117 Mass., 189; Linzee v. Mixer, 101 Mass., 529, 530; Sandborn v. Rice, 129 Mass., 396; Hano v. Bigelow, 155 Mass., 343; Hopkins v. Smith, 162 Mass., 444; Barrow v. Richard, 8 Allen, 351; Weston v. McDermott, Law Rep., 2 Ch., 72; Whatman v. Gibson, 16 Eng. Chan. Rep., 9 Simons, 196; Spicer v. Martin, 14 App. Cases, pp. 20, 24 and 25; Rowan's Ex'rs v. Portland, 8 B. Mon., 232; St. Louis Packet Co. v. Gray, 9 Bush, 145; Grogan v. Hayward, 6 Sawyer, U. S. Cir Ct., 498; Washburne on Easements, 4th ed., pp. 115 and 116; Washburne on Easements, 3d ed., pp. 96-106, side pp. 62 and 64.

4. The testimony of an architect as an expert witness is competent to show the meaning of the words "residence" and "apartment house" as architectural terms and prove that it has a peculiar and technical signification in that science or profession. Greenleaf on Evidence, secs. 277-280 and 292; Eaton v. Smith, 20 Pickering, 156; Schooner "Reeside," 2 Sumner Cir. Ct. Reps., 569; Meade v. The Northwestern Ins. Co., 7 N. Y., 530; Astor v. Union Ins. Co., 100 Mass., 518; Smith v. Wilson, 3 Barnwall and Ad., 728.

5. Upon proving loss of any document or writing, or inability from any cause to produce or procure it, oral testimony as to its contents is admissible. 1 Greenleaf on Evidence, sec. 558.

6. Notice of the plan of St. James Court, and all representations concerning it, as stated in the petition, is admitted by C. M. Phillips by his failure to deny allegations of petition. Civil Code, sec. 126.

7. Notice to one party is notice to all the firm; therefore, C. M. Phillips is charged with notice of everything known to his partner, W. H. Slaughter. Bates on Partnership, vol. 1, sec. 382; Watson v. Wells, 5 Conn., 468.

BENNETT H. YOUNG on same side.

1. Parol evidence is admissible to show any facts connected with the

contract outside of the mere restrictions in the deed itself.
Willis v. Herbert, 117 Mass., 151; Knapp v. Hall, vol. 20, N. Y.
Supplement, p. 44; Collins v. Tillous' Admr., 26 Conn., 368; Hall
v. Solomon, 61 Conn., 482.

2. A "residence" does not mean a house five stories high, built in
flats, one upon the top of the other, for the accommodation of
fifteen families, and with a dining-room, a restaurant, a common
laundry and elevators all in operation in the building.

3. Appellee having notice by its deed that its use of the property was
confined to residence purposes, it became its duty at once to go
and see whether there was any limitation, or qualification of his
rights to use the property for the purposes to which it was about
to be subjected. Talmage v. East River Bank, 26 N. Y., 107.

4. Appellant having acquired certain rights under his deed, and under
the plans and purposes with which St. James Court was laid out,
is entitled to have these rights enforced, and if a violation of any
stipulations in his deed, or the deeds of others, is made, or about
to be made, he is entitled to have the assistance of a court of
equity to prevent such violation. Rowan's Ex'or v. Portland, 8
B. M., 235; Memphis & St. Louis Packet Co. v. Grey, 9 Bush, 146;
Hutchinson v. Ulrich, 145 Ill.; Ammerman v. Dean, 132 N. Y.,
355; Trustees of Columbia College v. Thacker, 87 N. Y., 311.

E. F. TRABUE OF COUNSEL ON SAME SIDE.

C. B. SEYMOUR FOR APPELLEE.

1. All exceptions, restrictions and reservations in deeds must be
strictly construed; and the phrase "for residence purposes only"
was evidently used purposely to express the broad idea that any
use whatever for purposes of residence was admissible provided
the conditions as to price and location were complied with.

W. S. PRYOR ON SAME SIDE.

1. The words "residence" and "residence purposes" were intended to
apply to the building and its use, and there is no evidence or
claim whatever that the building has been used, or is being used,
or can be used, for any other purposes. Hutchinson v. Ulrich, 145
Ill.

2. Even if there was a doubt as to the rule of law or equity covering
this case a chancellor would hesitate before requiring this struc-
ture, costing over forty thousand dollars, to be torn down in

order to preserve the symmetry and beauty of St. James Court, or to gratify the fancy of those whose exclusive associations prompt them to seek refuge from the common herd.

GEORGE B. EASTIN OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

This action was brought to restrain the erection of what is known in the record as an apartment house on St. James' Court in the city of Louisville. The language of the restricting clause in the conveyance controlling the matter is as follows:

"It is a condition of this deed that the property herein conveyed shall be used for residence purposes only, and that, in erecting a residence therein it shall be built of brick or stone and shall cost not less than seven thousand dollars and that in erecting said residence the front wall thereof shall be not less than thirty-five feet back from the sidewalk line of St. James' Court."

It is also averred that there was a symmetrical plan for improving this Court with single and segregated private residences which would be disturbed, in fact destroyed by the erection of the house complained of and notice of which plan was given the public by advertisements, posters and hand bills descriptive of the character of the buildings that were to be erected in the Court.

The proof shows that the building complained of is to cost some forty thousand dollars, is to be of brick and stone and its front wall is to be set back the required distance.

The controversy is whether this house is to be used for residence purposes only within the meaning of the deed.

The explanation of its character and in answer to the claim that there was to be in it a public or semi-public restaurant the originator of the scheme to erect this house, testifies that "there is to be no restaurant of a public nature; there is to be everything in this house to make housekeeping comfortable. Every apartment in the house is to have a parlor and dining room and one or more bed rooms and a kitchen. Every apartment is to have more than one bed room; there is only one four room flat. Provision is made in the house for hot and cold water and all other conveniences. The basement, in which is to be a large dining room, to be used by the occupants of the house if desired, also contains three sets of laundry tubs, that each apartment may have one or more days to use in laundering their linen, or to be used in any way they choose as a laundry is used in a private residence. A part of the basement is to be used for storing the trunks of the parties who may choose to put their trunks out of their apartments. There is to be nothing about it of a cheap or nasty kind. There is but one house in St. James Court constructed of as fine material and that is the Conrad residence."

It is shown, indeed admitted, that these different apartments or flats are places for persons to reside in, but it is contended that the language of the restriction conveys the idea of a single residence for a single family or at any rate excludes the idea of a number of residences under the same roof or in the same house.

We think, however, that to give the language used, this meaning, would be to extend its scope beyond the ex-

pressed intention of the parties.  The purposes for which
the house is to be erected on the Court were to be used
were "residence purposes only."  And as the house in
controversy is to be constructed for such purpose only
and is not to be used for any other purpose, we do not
think its construction is at all prohibited by this restric-
tion clause.

If the intention had been to permit the erection of only
segregated private residences, the instrument would
doubtless have so provided.  In Hutchison v. Ullrich, 145
Ill. 336, the purchaser covenanted to erect "a single dwell-
ing costing not less than seventy-five thousand dollars"
and further "that only a single dwelling is to be con-
structed or placed upon each fifty foot lot."  It was held
that the intention was to require the property to be used
for residence purposes and under the restrictive clauses
named in the deed, stores, livery stables, warehouses, etc.,
could not be erected, but that flats or apartment houses
could be erected.

In Gillis v. Bailey, 21 N. H. 156, the language was
sufficiently explicit to prohibit the erection of flats or
apartment houses.  The language was, "in order that the
buildings erected thereon may not be crowded together,
but may each be surrounded by a space of open ground,
and for this purpose, it has been agreed that only one
single dwelling house with a shed, barn or other build-
ings requisite for the use of same, shall be erected, etc."

We do not think the language we have here to deal
with "for residence purposes only" is as restrictive as
that in either of the cases cited.  The proof as to the

general plan of improving this Court as shown by the advertisements of its original promotors, is indefinite, and knowledge of them was not brought home to the appellee.

We think the chancellor properly refused the relief asked and his judgment is affirmed.