DUDLEY N. HARTT & another *vs.* HENRY A. RUETER & others,
trustees.

ROBERT H. GARDINER & another, trustees, *vs.* SAME.

Suffolk.    October 18, 19, 1915. — March 1, 1916.

Present: RUGG, C. J. LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Equitable Restrictions.    Deed.    Land Court.    Words, "*Porte-cochère.*"*

Where equitable restrictions were imposed upon thirteen lots of land adjoining a
certain private street according to a general plan for the development of the
entire tract of land, the fact, that the restrictions imposed upon three of the lots
situated at the end of the private street, which had no outlet at that end,
differed from the uniform restrictions imposed on the other ten lots in not re-
quiring like those restrictions that dwelling houses should be set back twenty-
five feet from the private street but permitting houses to be built up to the line
of the way on those three lots, does not affect the character of the restrictions on
the other ten lots or render such restrictions less binding.

A right to the enforcement of an equitable restriction for the benefit of a lot of land
is appurtenant to the land and passes under a deed that conveys the land "to-
gether with . . . all the rights, privileges and appurtenances thereto belonging,"
without any specific mention of the restriction.

Where an equitable restriction imposed upon lots adjoining a private street, called
an avenue, required "that no building shall be placed nearer to said principal
avenue than twenty-five feet," and a judge of the Land Court had found as a
fact "that the porte-cochère of the house on the respondent's premises extends
over, or into, the restricted area, it being at its northeast corner only seventeen
and sixteen one hundredths feet from the westerly line of the principal avenue,"
and where there was nothing in the record except the word "porte-cochère" to
indicate the nature of the structure and nothing to show when it was built, it
was *held*, that, in the absence of a finding that the structure was built and
maintained in violation of the restriction, it could not be ruled as matter of law
that its existence constituted such a violation.

Although in a case in the Land Court, where a trial by jury is not claimed, the
findings of a judge of that court upon all questions of fact are final, yet, where
the facts on which a finding was made are not in dispute and all the evidence
is before this court, the question of law is presented whether the evidence jus-
tified the finding of the judge.

It cannot be found that the right to enforce an equitable restriction has been aban-
doned or relinquished, where no adverse use is established, and where there is no
evidence of any act of the owner of the land to which the right to enforce the
restriction is appurtenant unequivocally manifesting either a present intention
to relinquish the restriction or a purpose inconsistent with its further existence.

CROSBY, J.    These are two petitions brought in the Land Court
to register and confirm the titles to certain parcels of land owned by

the petitioners respectively, and the question presented is whether such lands are subject to certain restrictions, recited in deeds of record given by their predecessors in title, which restrictions created rights that will be maintained in equity in favor of the respondents.

In 1849 John H. Wilkins owned a tract of land in Roxbury,

PLAN OF
BUILDING LOTS IN ROXBURY
BELONGING TO
JOHN H. WILKINS

CHAS. WHITNEY, SURVEYOR
JULY 26, 1849.

comprising the land of the petitioners and of the respondents, except a portion of the Gardiner property which is not affected by any question involved, and caused a plan to be made and recorded, dividing the tract into thirteen lots. This plan is entitled: "Plan of Building Lots in Roxbury Belonging to John H. Wilkins, Chas. Whitney, Surveyor, July 26, 1849." A reduced copy of this plan is printed above. By deed dated August 11, 1849, Wilkins con-

veyed to Elisha D. Winslow, under whom the respondents by mesne conveyances hold title, lots 1, 2 and 3 shown on the plan. This deed contains the following restrictions: "It is hereby understood and agreed that no buildings other than dwelling houses and the usual structures appurtenant thereto shall be erected on the premises; that no business shall be established thereon of a nature to be unhealthy or offensive in the neighborhood; that no building shall be placed nearer to said principal avenue than twenty-five feet, and the said Winslow and his assigns shall keep in repair one-half of said principal avenue so far as it joins the above granted premises, these same restrictions applying to all the lots on the Easterly side of said Avenue and now owned by Wilkins except lot No. 8."

When this deed was given, Wilkins was the owner of the remaining ten lots. By deed dated September 25, 1849, Wilkins conveyed to Joseph Nickerson lots 8 to 13, both inclusive, the title to which lots by mesne conveyances has become vested in the petitioners; and by deed dated September 27, 1849, Wilkins conveyed to Nickerson lots 4 and 5. Both of these deeds contain the same restrictions as those in the deed to Winslow, except that the set back on lot 8 applied only to a stable or outhouse.

By deed dated March 24, 1853, Nickerson conveyed lot 4 to Winslow subject to the same restrictions. The lots 1 to 4, both inclusive, are now owned by the respondents, except a strip on the westerly side since taken by the city of Boston for a public way. The Whitney plan shows a way running northerly from Perkins Street across the tract to a point between lots 6 and 8, with no outlet at its northerly end. This way is referred to in the original deed from Wilkins to Winslow as an "avenue," lots 1 to 7, both inclusive, being on the westerly side, and lots 8 to 13, both inclusive, being on the easterly side of the avenue. The lots on the easterly side of the avenue comprise a portion of the lands of both petitioners.

By deeds dated August 11, 1849, Wilkins conveyed lot 6 to Phineas B. Smith, and lot 7 to Ira Allen, subject to the same restrictions except that there was no set back on lot 7, and the deed of lot 6 prohibited the erection of a building thereon which should project over the westerly line of the avenue; these lots (6 and 7) were acquired by Nickerson by deeds dated August 12, 1850, and

March 23, 1859, so that upon the latter date Nickerson owned all the lots shown on the plan except lots 1 to 4 inclusive, owned by Winslow.

By deed dated August 29, 1859, Wilkins released to Nickerson all his right, title and interest in lots 5 to 13, both inclusive, using the following language: "Meaning and intending hereby to release and discharge any conditions, restrictions or limitations annexed to said premises by my said deeds." On the same date Wilkins executed a release in the same form to Winslow of the restrictions on lots 1 to 4, both inclusive. On August 30, 1859, Nickerson released to Winslow the restrictions on lot 4, and on May 28, 1860, Smith released to Nickerson the restrictions on lot 6.

By deed dated September 1, 1859, Winslow conveyed lots 1 to 4, both inclusive, to Benjamin F. Thomas. This deed did not specifically mention any restrictions upon the lands now owned by the petitioners, but referred to the Whitney plan and conveyed the lots "together with . . . all the rights, privileges and appurtenances thereto belonging." This deed also referred to the release from Wilkins to Nickerson and to the release from Nickerson to Winslow above referred to.

By deed dated September 12, 1871, Thomas conveyed lots 1, 2, 3 and 4 to Henry Herman Rueter, under whose will the respondents claim title. This deed did not specifically refer to any restrictive rights in the lands owned by the petitioners, but described the land conveyed as lots 1, 2, 3 and 4 "on said plan drawn by said Whitney," together with "all the rights, privileges and appurtenances thereto belonging."

The judge of the Land Court * found that "although the restrictions imposed by Wilkins were intended as a part of a general scheme or plan of improvement and development and were in the nature of equitable restrictions running with the land, they have been wholly lost by abandonment and are no longer operative."

The petitioners contend that the restrictions were personal in character and were not equitable restrictions imposed for the benefit of the land now owned by the respondents. They also claim that if such restrictions were not of a personal character they have been abandoned and are therefore no longer in force.

* *Corbett,* J.

1. We are of opinion that the judge of the Land Court was right in ruling in effect that upon all the evidence a general plan was established which created an equitable restriction for the benefit of the land of the respondents. This would seem to be obvious from the acts of the parties and the attendant circumstances. The plan for the development of the entire tract by Wilkins for use and occupancy as a residential district was not unlike that which has been adopted by other landowners, which this court has been called upon to consider and where such restrictions have been held to have been imposed as a part of a general plan for the benefit of an entire tract. *Whitney* v. *Union Railway,* 11 Gray, 359. *Hopkins* v. *Smith,* 162 Mass. 444. *Evans* v. *Foss,* 194 Mass. 513.

The fact that the restrictions upon three of the lots were not identical, and were different from those imposed upon the other ten, does not seem to be of much importance under the circumstances. Lot 7 was conveyed without any restriction as to the distance from the avenue that a building could be placed, but a reference to the Whitney plan shows that this lot did not abut upon the avenue, except a narrow strip thereof which was apparently the only means of access to the lot. The restriction upon lot 6 was that no building should be erected projecting over the westerly line of the avenue, and the set back on lot 8 applied only to a stable or outhouse. So far as the location of lots 6 and 8 is concerned we do not consider a variation of the restrictions in one particular affecting these two lots as of great significance. As these lots were situated opposite each other at the extreme northerly end of the avenue which had no outlet to the north, it would seem that to allow them to be built upon up to the line of the way would not materially affect the general plan. *Hano* v. *Bigelow,* 155 Mass. 341. *Bacon* v. *Sandberg,* 179 Mass. 396. *Evans* v. *Foss,* 194 Mass. 513. The case at bar is plainly distinguishable from *Webber* v. *Landrigan,* 215 Mass. 221.

The fact that the later deeds under which the respondents claim title do not specifically refer to the restrictions does not indicate that they are merely personal covenants. The contention of the petitioners to the contrary cannot be supported.

In all the deeds under which the respondents claim title the restrictions are specifically set out, or else the lots were conveyed by deeds together with all the appurtenances thereto belonging.

Under the deeds last above referred to, the respondents not only took title to the lots therein described, but also, as appurtenant thereto, acquired an equitable restriction in the lands of the petitioners. As these rights were appurtenant to the land conveyed, no specific reference in the deeds to the restrictions was required to vest the right to enforce such restrictions in the respondents. *Crabtree* v. *Miller*, 194 Mass. 123, 126. *Willets* v. *Langhaar*, 212 Mass. 573, 575. *Parsons* v. *New York, New Haven, & Hartford Railroad*, 216 Mass. 269.

The judge of the Land Court found as a fact that "It appears by a plan put in evidence by the petitioners that the porte-cochère of the house on the respondents' premises extends over, or into, the restricted area, it being at its northeast corner only seventeen and sixteen one hundredths feet from the westerly line of the principal avenue." "Porte-cochère" is defined as a large gateway allowing vehicles to drive into a courtyard. Sometimes in the United States it is applied erroneously to a covered carriageway.

There is nothing in the record to indicate the nature of the structure, and in the absence of any finding that it was built and maintained in violation of the restrictions, we cannot so rule as matter of law. Whether its maintenance is contrary to the restrictions would depend on other facts not before us, including its dimensions, design, and the character of its construction, and also whether it was built recently or otherwise.

2. The judge of the Land Court found that the restrictions had been extinguished by abandonment. As a trial by jury was not claimed, the findings of the Land Court upon all questions of fact are final. R. L. c. 128, § 13. St. 1910, c. 560, § 1.

Where, however, no facts are in dispute, and all the evidence is before the court, a question of law is presented. If upon such facts and the reasonable inferences to be drawn therefrom, the evidence is insufficient as matter of law to justify the finding, it will be set aside. The evidence is all before us as the bill of exceptions recites, "The above facts, findings of facts and conclusions of facts were all the facts and all the evidence in these cases on which the court made its findings of fact and conclusions of fact and made its rulings of law."

In *Parsons* v. *New York, New Haven, & Hartford Railroad*, 216

Mass. 269, it is said, at page 272, "An easement created by deed is not defeated by mere non-user. There must be in addition other acts of the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence." *Willets* v. *Langhaar,* 212 Mass. 573, 575. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass.. 402, 413. *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145. *Barnes* v. *Lloyd,* 112 Mass. 224. *Owen* v. *Field,* 102 Mass. 90, 114.

In the case at bar there is no evidence to show an adverse use of the dominant estate by the owner of the servient estate, nor is there evidence of any acts of the owner of the dominant estate conclusively and unequivocally manifesting either a present intention to relinquish the restrictions or a purpose inconsistent with their further existence. In other words, there is no evidence in the record to warrant a finding that the restrictions have been abandoned or relinquished. It follows that they are in force as appurtenant to the land of the respondents and the petitioners' lands are subject thereto respectively as above set forth, so far as their lands were a part of the original Wilkins' tract, as shown on the Whitney plan.

The result is the entry must be

*Exceptions sustained.*

*D. C. Delano,* for the respondents.
*C. L. Barlow,* for the petitioners.