ANGIE M. BOOTH et al., Appellants, *v.* WILLIAM H. W. KNIPE et al., Respondents.

**Real property — deed — restrictive covenants — when restrictions in deed as to kind of houses and use thereof to be erected upon land conveyed to grantee run with the land and bind subsequent purchasers thereof — when a breach of such restrictions may be restrained by injunction.**

The owner of a block on a street in New York city sold lots therefrom during a period of thirteen years, the owner after the last sale retaining nothing for himself. Uniform restrictions were part of the plan and were imposed by the grantor upon each lot by the following provision: " This conveyance is made  *  *  *  on the agreement that he, the said party of the second part, his heirs and assigns, shall, within two years from the date hereof, cause to be erected and fully completed upon said lot, a first-class building, adapted for and which shall be used only as a private residence for one family, and which shall conform to the plans made or being made " by an architect therein named " for the whole front between 72nd and 73rd Streets, on River-

side Drive, and said conveyance is made and said lot is sold upon that condition." The grantee of the lot in question built thereon and used the building as a private dwelling. The present occupant, a tenant of the successor in interest, is using it as a maternity hospital. *Held, First,* there is a negative duty imposed by the covenant to refrain from the prohibited use. That duty runs with the land, and charges all who take with knowledge of its terms. This is more than a limitation upon construction. It is a restriction of enjoyment. *Second,* a covenant of this kind is sometimes for the benefit of the grantor personally, and sometimes for the benefit of successive lot owners. Whether it is of the one class or of the other is a question of intention, which is to be gathered, not merely from the language of the deed, but from all the surrounding circumstances. Enough is shown here to justify the conclusion as an inference of fact that the scheme embraced the tract, and that all who might thereafter buy were within the range of the intended benefit. *Third,* the attempted use is a breach of the restriction which may be restrained by injunction in an action brought by owners of neighboring dwellings.

*Booth* v. *Knipe,* 178 App. Div. 423, reversed.

(Argued January 7, 1919; decided January 28, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 13, 1917, which reversed an order of Special Term granting a motion for an injunction *pendente lite.*

The following questions were certified:

." 1. Is the agreement contained in the deed from Sutphen to Kleeberg of the premises which are the subject of this action, a covenant running with the land?

" 2. Does it bind the present owners and occupants of the property on that block front?

" 3. Is it confined to the first house erected on each lot?

" 4. Is the agreement enforcible by owners of the other properties on that block front?

" 5. If the agreement in the deed from Sutphen to Kleeberg is a covenant running with the land, is the use

of the premises by the defendants as disclosed by the papers before the court a violation of such covenant?

" 6. Does the complaint state facts sufficient to constitute a cause of action in favor of the plaintiffs against the defendants? "

The facts, so far as material, are stated in the opinion.

*Herbert McKennis, Robert F. Greacen* and *Theodore W. Morris, Jr.,* for appellants. The agreement contained in the deed from Sutphen to Kleeberg constitutes a covenant running with the land. (*Graves* v. *Deterling,* 120 N. Y. 455; *Post* v. *Weil,* 115 N. Y. 361; *Avery* v. *N. Y. C. & H. R. R. R. Co.,* 106 N. Y. 142; *Zweig* v. *Sweedler,* 140 App. Div. 319; *Union Stock Yards Co.* v. *Nashville Packing Co.,* 140 Fed. Rep. 701; *Coleman* v. *Beach,* 97 N. Y. 545; *Morehouse* v. *Woodruff,* 218 N. Y. 494.) The agreement is a restriction binding on the present owners and occupants of the property on the block front on Riverside Drive between Seventy-second and Seventy-third streets. (*R. L. Assn.* v. *Kellogg,* 144 N. Y. 348; *Mott* v. *Oppenheimer,* 145 N. Y. 212; *Silberman* v. *Uhrlaub,* 116 App. Div. 869; *Acer* v. *Westcott,* 46 N. Y. 384; *Lattimer* v. *Livermore,* 72 N. Y. 174; *Rowland* v. *Miller,* 139 N. Y. 93; *McDonald* v. *Spang,* 55 Misc. Rep. 332; *Levy* v. *Halcyon Casino Hotel Co.,* 45 Misc. Rep. 289; *Zipp* v. *Barker,* 40 App. Div. 1, 6; *De Lima* v. *Mitchell,* 49 Misc. Rep. 171.) The agreement is a restriction on the use of the premises, at least during the existence of the first house which was erected on each lot. (*Horner* v. *C., M. & S. P. Ry. Co.,* 38 Wis. 175.) The restriction is enforcible by the owners of the adjoining property on the block front in question. (*Korn* v. *Campbell,* 192 N. Y. 490.) The use of the premises by the defendants, as disclosed by the papers before the court, is a violation of the agreement contained in the deed from Sutphen to Kleeberg. (*Levy* v. *Schreyer,* 177 N. Y. 293; *Kalb* v.

*Mayer,* 164 App. Div. 577; *Goodhue* v. *Pennell,* 164 App. Div. 821; *Barnett* v. *Vaughan Institute,* 134 App. Div. 921; 197 N. Y. 541.)

*George L. Ingraham* for respondents. The agreement or condition contained in the deed from Sutphen to Kleeberg was not a covenant restricting the use of the premises conveyed which ran with the land, but was an affirmative agreement to carry out a building scheme, which was satisfied by the erection of the building thereon in accordance with the agreement. (*Hurley* v. *Brown,* 44 App. Div. 480; *Duryea* v. *Mayor, etc.,* 62 N. Y. 592; *Blackman* v. *Striker,* 142 N. Y. 555; *Clark* v. *Devoe,* 124 N. Y. 120; *Miller* v. *Clary,* 210 N. Y. 127; *R. P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 268; *Kurtz* v. *Potter,* 44 App. Div. 480; *Krekeler* v. *Aublach,* 51 App. Div. 591; 169 N. Y. 372; *Haywood* v. *B., etc., Society,* L. R. 8 Q. B. 403; *London & S. W. Ry. Co.* v. *Gomm,* L. R. 20 Ch. Div. 562; Sins on Covenants, 242, 243; *Holford* v. *Acton,* 2 Ch. 1890, 240.) From the allegations of the complaint and the undisputed proof before the court at Special Term, the premises in question were used only as a private residence for one family. (*Gallon* v. *Hussar,* 172 App. Div. 393; *Smith* v. *Graham,* 161 App. Div. 803; *Stone* v. *Pillsbury,* 167 Mass. 332; *Hoffman* v. *Parker,* 239 Penn. St. 398.) Because of the changed character of the neighborhood no covenant restricting the use of the land which would prevent an occupant of the house from receiving patients and treating them should be enforced in equity. (*Columbia College* v. *Thacher,* 87 N. Y. 316; *Kitchin* v. *Brown,* 180 N. Y. 414.)

CARDOZO, J. The defendant Waterside Land Corporation is the owner, and the defendant Knipe the tenant, of a building on Riverside Drive between Seventy-second and Seventy-third streets in the city of New York. The

tenant, who is a physician, uses the building for the reception and care of women in child-birth. The action is brought by owners of neighboring dwellings to enjoin the continuance of the use as a violation of a restrictive covenant. An injunction granted at Special Term was reversed at the Appellate Division.

In 1896 one John S. Sutphen was the owner of the entire block between Seventy-second and Seventy-third streets fronting on Riverside Drive. He formed a general plan to improve and develop the land, and filed in the office of the register a map dividing it into lots. The lots, when sold, were conveyed by reference to the map. The first sale in June, 1896, included the site of the defendants' building, and was made to one Kleeberg, from whom, by mesne conveyance, the lot reached its present ownership. The last sale was made in December, 1909, more than thirteen years later. Uniform restrictions were part of the plan both as conceived and as executed. They were imposed by the common grantor upon the sale of every lot. The slight variances of phraseology suggest no variance of substance. In the deed to Kleeberg the restriction reads as follows:

" This conveyance is made by the said parties of the first part to the said party of the second part, on the agreement that he, the said party of the second part, his heirs and assigns, shall, within two years from the date hereof, cause to be erected and fully completed upon said lot, a first-class building, adapted for and which shall be used only as a private residence for one family, and which shall conform to the plans made or being made by C. H. P. Gilbert, architect, No. 18 Broadway, New York City, for the whole front between 72nd and 73rd Streets, on Riverside Drive, and said conveyance is made and said lot is sold upon that condition."

Within the time limit prescribed, Kleeberg built upon

the lot. He used the building as a private dwelling. His grantee used it for a like purpose. The present occupant asserts the right to use it as he pleases. In this position the Appellate Division has sustained him. The restrictive covenant is said to have spent its force when Kleeberg built the dwelling; the burden did not pass to subsequent grantees.

We reach a different conclusion. The covenant has a two-fold aspect (*Hart* v. *Lyon,* 90 N. Y. 663). There is the affirmative duty to build. That duty has been discharged, and we do not need to determine whether it was limited to the first grantee (*Miller* v. *Clary,* 210 N. Y. 127). There is the negative duty to refrain from the prohibited use. That duty runs with the land, and charges all who take with knowledge of its terms (*Rowland* v. *Miller,* 139 N. Y. 93; *Thompson* v. *Diller,* 161 App. Div. 98, 101; *Hart* v. *Lyon, supra*). A restriction almost identical was construed and enforced in *Hopkins* v. *Smith* (162 Mass. 444). The covenant is not merely to build a structure adapted for a given use. The covenant is that the structure, when built, shall be restricted to that use. It " shall be used *only* as a private residence," and a private residence " for one family." This is more than a limitation upon construction. It is a restriction of enjoyment.

The argument is made that the restriction is futile, and that equity should refuse to enforce it because of its futility. We are told that an owner may tear the dwelling down, and that nothing in the covenant will restrict the building to be substituted. If the premise be assumed, the conclusion of futility does not follow. Restrictions upon the form or the use of the first building to be constructed are common in conveyances (*Kurtz* v. *Potter,* 44 App. Div. 262; 167 N. Y. 586). They do not become worthless because a second building may be different. Owners of land know that buildings are put

up to be used. They are not put up to be destroyed. To fix their character at the beginning may shape the future of the neighborhood. We do not refuse to enforce a covenant while it lasts because it may not last forever. Limitations are not illusory because they are not complete. The burden clings to the land till the building loses its identity.

We have spoken of the incidence of the burden. We must determine the incidence of the benefit. The plaintiffs say that there was a common building scheme, affecting a known area (*Hopkins* v. *Smith*, 162 Mass. 444). They say that the purpose of the grantor in imposing the restrictions was to effectuate the scheme, and to maintain for the benefit of purchasers the character of the neighborhood. In fulfilment of that purpose, like covenants were inserted upon the sale of every lot. They were inserted even upon the last sale, at a time when the grantor retained nothing for himself. They require conformity to a plan prepared by an architect " for the whole front between 72nd and 73rd Streets." They thus disclose upon their face the scope and unity of the scheme. A covenant of this kind is sometimes for the benefit of the grantor personally, and sometimes for the benefit of successive lot owners. Whether it is of the one class or of the other is a question of intention (*Hano* v. *Bigelow*, 155 Mass. 341, 343; *Hartt* v. *Rueter*, 223 Mass. 207; *Korn* v. *Campbell*, 192 N. Y. 490). The intention is to be gathered, not merely from the language of the deed, but from all the surrounding circumstances. Enough is shown here to justify the conclusion as an inference of fact that the scheme embraced the tract, and that all who might thereafter buy were within the range of the intended benefit (*Hopkins* v. *Smith, supra; Hartt* v. *Rueter, supra; Brouwer* v. *Jones*, 23 Barb. 153; *Thompson* v. *Diller*, 161 App. Div. 98, 101, 104; *Renals* v. *Cowlishaw*, L. R. 9 Ch. D. 125, 129; *Nottingham*

*Patent Brick & Tile Co.* v. *Butler,* L. R. 16 Q. B. D. 778, 784; *Rogers* v. *Hosegood,* L. R. 1900, 2 Ch. 388; *Elliston* v. *Reacher,* L. R. 1908, 2 Ch. 374; affd., 1908, 2 Ch. 665; *Reid* v. *Bickerstaff,* L. R. 1909, 2 Ch. 305, 319; *Korn* v. *Campbell, supra).*

We cannot doubt that the attempted use is a breach of the restriction. The lease provides that the building shall be " occupied as a sanatorium and not otherwise." The evidence makes it clear that it is used as a maternity hospital. By no stretch of language can we say that this is equivalent to use " as a private residence for one family " (*Smith* v. *Graham,* 161 App. Div. 803; affd., 217 N. Y. 655; *Barnett* v. *Vaughan Institute,* 134 App. Div. 921; 197 N. Y. 541).

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court; and the questions certified should be answered in the affirmative.

HISCOCK, Ch. J., CHASE, HOGAN, POUND and ANDREWS, JJ., concur; MCLAUGHLIN, J., dissents.

Order reversed, etc.