## DILLON v GAKER

Ohio Common Pleas, Hamilton Co

Decided Oct 13, 1936

Leo Weinberger, Cincinnati, for plaintiff.
Daronne R. Tate, Cincinnati, for defendant.

### OPINION

By BAILEY, J.

This is a suit for a declaratory judgment.

The parties agreed upon a statement of facts and counsel have briefed the case thoroughly and ably.

The plaintiff contracted to purchase certain real estate from a corporation known as The Ruffner Realty Company. The contract of purchase, which is in evidence, contains certain restrictions as to the use of the real estate described therein. Plaintiff has contracted to sell one lot, known as Lot 6 of The Ruffner Subdivision, to The Laurel Building Company which intends to erect on said lot a building containing four apartments of three rooms each. Defendant, who owns the adjacent lot, No. 5, claims that the erection of such a building is prohibited by certain restrictions contained in said contract.

To determine whether a building of the character proposed can be erected on said Lot 6, plaintiff brings this suit asking for a construction of the said restriction in plaintiff's contract. The case is another illustration of the benefits of the procedure for obtaining a declaratory judgment, as authorized by statute.

Said lots 5 and 6 are part of a subdivision containing about fifty numbered lots, each fifty feet in front, and a larger lot "A," most of which has been sold in similar lots of fifty foot frontage.

Said Lots 5 and 6 are situated north of Laidlaw Avenue in said subdivision and front on Paddock Road. Most of the other lots described in said contract of purchase are situated south of said avenue. The large lot (A) fronts on Rossmore Avenue, formerly Murray Road, about two squares distant from Lots 5 and 6.

The principal questions involved here are:

1. Does the above quoted provision in said contract of plaintiff prohibit the erection on Lot 6 of a building consisting of four apartments for residence purposes?

2. If said restriction should be construed as prohibiting such construction, has the defendant as the owner of the adjacent lot, No. 5, the right to enforce the restriction?

The recorded plat of the subdivision filed with the recorder on April 14, 1925, does not show, or make any reference to, any restriction on the use of the property.

By deed dated June 3, 1927, and duly recorded, The Ruffner Realty Company conveyed to Estella B. Gaker, defendant herein, said Lot 5, the deed containing the following restriction:

"Other considerations of this sale are that the said Estella B. Gaker, her heirs and assigns, shall build upon this lot a residence and not more than one, and begin construction of same within one year from date."

Under date of October 4, 1935, said Realty Company entered into the aforesaid agreement with the plaintiff, Joseph Dillon, and thereby agreed to sell to plaintiff certain lots in said subdivision, being all of the lots therein of which said company remained the owner, except one fifty foot lot being a part of the large lot "A," on which said fifty foot lot members of the Ruffner family resided.

Plaintiff agreed to pay for said lots $31,300, of which $1,000 was to be paid at the time of the execution of the agreement, $4,000 on or before fifteen days thereafter, and the balance, $26,300 to be paid as each lot should be conveyed; a price of $1,100

being fixed for any lot on Paddock Road, Laidlaw Avenue, Regent Avenue or California Avenue, and $22 per foot for any lot on Murray Road or Ryland Avenue. The contract contains the following provision:

"On payment being made as above set forth for any or all of the lots, the seller agrees to convey them to the buyer by general warranty deed, with release of dower, if any outstanding, clear, free and unincumbered except the following restrictions:

"No more than one residence shall be built on each lot.

"Plans and specifications shall meet with the approval of The Ruffner Realty Company before construction is commenced.

"Each residence to front on the front lot line, and the front line or face of the building proper to be at least thirty (30) feet from the front line of the lot, main line of building to be at least five (5) feet from side lines of lot.

"No fences shall be erected around the front of the residence, but a fence may be erected around the rear and side lines of the lot, not more than five (5) feet high and of materials other than wood, and not further front than the rear of the building.

"The present grade of the lot shall not be materially altered and shall be used for residence purposes only, and shall not be used for any mercantile, manufacturing or other business purposes, nor for private hospital, nor for infirmary purposes, and no fermented, distilled or other liquors shall be manufactured or sold on the premises.

"The title to these lots shall never vest in a person or persons of African descent, or colored persons.

"No outbuildings shall be erected on the premises. A garage may be erected in the rear of the premises provided · it is four (4) feet from the side lines of the lot.

"These restrictions to be binding until the year 1950."

It was further stipulated by the parties that since said plat was recorded all of the numbered lots and part of Lot "A" have been conveyed, except:

(a) Part of Lot 24 which was conveyed to Laura Backs, January 15, 1925, prior to the recording of said plat:

(b) The Ruffner residence above mentioned, known as No. 1137 Rossmore Avenue, which is a two family apartment building occupied by J. A. Ruffner and Sadie B. Ruffner, husband and wife, president and secretary respectively of The Ruffner Realty Company, and which was so occupied by them before the subdivision was made and ever since. Said building originally was a one family residence but was converted into a two family apartment building in 1926, the exact date being unknown.

Prior to the date of defendant's deed to said Lot 5 said company had made twenty-six deeds to various grantees of the lots numbered one to fifty inclusive, and two deeds had been made for parts of Lot "A." All of said deeds contain restrictions substantially the same as contained in the Gaker deed with the exception of the deed to Laura Backs, which deed contained no restriction but on the lot there has now been constructed a one family residence; and except the deed to Amanda Toebler, dated June 22, 1925, for the west end of Lot 23 and thirty feet of Lot 22. When the said deed to Toebler was executed a one family residence had already been erected on said lot. Said deed contained restrictions against the use of the property for any "mercantile, manufacturing or business purposes."

At the time of the filing of this suit there had been erected on, or were under process of construction on said lots one to fifty inclusive, thirty-five single or one family residences. Lot "A" has been divided into parcels on which there had been erected, or are under process of construction, twenty-seven single or one family residences, nineteen of which are on Ryland Avenue. There have also been constructed in said subdivision three—two family apartments, and two—four family apartments which are specifically described in the agreed statement.

Against the contention of the defendant that the restriction prohibits the erection on Lot 6 of the building contemplated by the plaintiff, counsel for the plaintiff invokes the familiar rule that restrictions on the use of real estate are not favored. However, such restrictions should be construed reasonably and so as to effect the purpose for which they were intended.

The purpose of such restrictions is well stated in 21 A.L.R., p. 1308, as follows:

"The building scheme forms an inducement to each purchaser to buy. It may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be bene-

ficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual."

Citing Tallmage v Bank, 26 N. Y., 105, (1862).

Reasonably construed then, what is the meaning of the provision "no more than one residence shall be built on each lot?" Here the word "residence" is used as a noun; that when it is used as an adjective it does not prevent the erection of a building for use by more than one family has been held in **Hunt v Held, 90 Oh St, 290; Aronoff v Williams, 94 Oh St, 145; Goodyear Heights Realty Co. v Furry, 33 Oh Ap 432.**

It has been held in other jurisdictions that the word "residence," used as a noun in similar restrictions does not prohibit the erection of an apartment house. Biltmore Development Co. v Cohen, 239 Ky., 460, (1931), citing and following McMurtry v Phillips Co., 103 Ky. 308.

In Bennett v Betreno, 235 N. Y. 477, (1923) the words "one dwelling" were held not to limit the use of the lot to the purpose of a one family house. To the same effect is Charlotte Construction Co. v Cobb, 195 N. C. 690. Other courts of high standing have held the contrary.

In Killian v Goodman, 229 Mich., 393, (1924) the first syllabus is:

"The words 'a dwelling house' and 'a residence,' as variously used in the deeds to describe the restrictions on the lots in a certain plat, construed, and held, to mean one single dwelling or one single residence, and therefore restricted the use of the premises to single residences or dwelling."

On page 62 the Michigan court cites a number of authorities, including **McGuire v Caskey, 62 Oh St, 419,** as holding that the failure to object to one violation of such building restriction does not prevent a grantee from enforcing restrictions when another violation becomes especially injurious to him or his property.

In Powers v Radding, 225 Mass., 110 (1916) the court construed a restriction providing "that only one dwelling house shall be erected thereon" and held that this language "referred to a dwelling to be used by one family and not to the form of structure, and that the erection of an apartment house must be enjoined." Syl. The court said on page 114:

"So construed the restrictions do not permit of more than one dwelling under a single roof or the erection of a building designed to include more than one apartment or flat. See Gillis v Bailey, 21 N. H. 149; Rogers v Hosegood, 69 L. J. Ch. (N. S.) 59; Harris v Roraback, 137 Mich., 292."

**Arnoff v Chase 101 Oh St 331,** is the case in our Supreme Court that is most nearly in point. There the deed provided that there should be "one house only on each lot; all lots are sold for residence purposes only." The court discussed Aronoff v Williams, supra, and distinguishes that case in which the words were "no more than one residence building." In Arnoff v Chase, the court said, page 334:

"In each of the cases referred to there was involved simply the bald construction of the phrases quoted, with no extrinsic aids to construction other than such as appeared in the instruments of which the phrases were a part. However, even if we could confine our view within the narrow limits of the words themselves, the instant case could not be disposed of upon the authority of the cases cited, since the word 'house,' though in some connections used as synonymous with 'building,' is unquestionably used, and commonly, both in literature and in common speech, as the equivalent of that sort of a home technically known as a single family residence. The latter interpretation gains in force when it is observed that the term 'building' or 'structure' is used when it is desired to control the place of construction, and the phrase 'for residence purposes' when the general character of the occupancy is in question. The further and distinct limitation of each lot owner to 'one house only' was evidently inserted for another purpose. It would be hypertechnical to interpret that purpose as satisfied by the construction of as many abodes as can be arranged vertically or horizontally under a common roof."

The Arnoff v Chase case was cited and followed in **Johnston v Parkin, 33 Oh Ap 174,** in which case the deed read "only one residence shall be erected on any lot" and it was held that said terms prohibited the erection of an apartment building. To the same effect is Ainsworth v Elder, 9 Pac. 1007, 1009.

Counsel for the plaintiff endeavored to distinguish the term "one house only" used in Arnoff v Chase and the term "not more than one residence" involved herein. Is not this what the court in Arnoff v Chase called "hypertechnical" construc-

tion? If the question is not clearly disposed of in Arnoff v Chase, this court will follow the Michigan and Massachusetts authorities and the decision of the Court of Appeals in Johnston v █ Parkin, and hold that the restriction reasonably construed, prohibits the erection of an apartment building on said Lot 6.

The second question is whether the defendant, as owner, of Lot 5 has the right to enforce said restriction. It was held in **Kiley v Hall, 96 Oh St 374,** that a lot owner cannot maintain an action to enforce restrictions in the deed of another owner when it does not appear that the latter purchased his lot with notice of a general plan for the improvement of an allotment and that notice that such restrictions were inserted in his deed for the benefit of the owners of the other lots. It was held also that the burden of proof of notice was upon the person seeking to enforce the restrictions.

It is essential to defendant's contention that it be shown that there was a general plan of restriction and that the plaintiff had notice thereof.

That there was a general plan of restriction, and that it was intended for the benefit of subsequent purchasers seems apparent. The court must take notice of the fact that the existence of such restrictions tends to increase the desirability of the property for residence purposes thereby increasing the value of the lots which in turn increases the profits of the subdivider. Therefore, it is held that the subdivider after obtaining such benefits can not by release to one purchaser terminate the right of another owner in the subdivision to enforce the restriction. Hartt v Rudder, 223 Mass. 207, (1916).

The invasion of such a residential district by an apartment house takes something off of the value of the property of each owner who has built in the district in accordance with the restrictions, not because apartment houses are obnoxious, but because they impair the harmony of such a district. It is also a matter of common knowledge that persons purchasing such property rely upon the restrictions in their deeds as protecting them against the acts of subsequent purchasers. Of course, ignorance of the fact that the law requires notice to such subsequent purchasers does not excuse the purchasers who desire to enforce the restriction, but the subsequent purchaser who desires to violate the restriction in his own deed should not be aided by a too technical con-

struction of the rights of his fellow-owners.

Notwithstanding the fact that the restriction is intended to prevent the erection of an apartment building on Lot 6, the plaintiff contends that the other owners have no rights because he did not contract with them. This is analogous to the technical rule of the common law that a third person, who was the beneficiary of a contract, could not sue thereon, but this rule was abandoned in this state in the leading case of **Emmitt v Brophy, 42 Oh St 82.** The rule is now █ firmly established in this state that a third person. not a party to a contract, can sue thereon on an agreement made for his benefit.

The question then remains whether notice to the plaintiff is proved. In Kiley v Hall it was urged that the existence of a number of single or one family residences upon the lots in the subdivision was not of itself notice to the subsequent purchasers that the use of the lot which he bought was restricted. The court pointed out (page 381) that although practically all of the lots had been built upon in 1916, when the case was tried, yet the plaintiff in error had acquired his lot in 1911, and from aught that appeared in the record the same condition was not shown to have existed at the time of his purchase. After a discussion of this point by Judge Newman, he said on page 384:

"And assuming that the right of action did exist in defendant in error, was the Court of Appeals correct in holding that the building constructed by plaintiff in error was in violation of the restriction."

The court held that the restriction in question did not apply, and the decision might have been rested upon that point alone. Inasmuch as the other point was made part of the syllabus it is binding upon this court, if the facts in this case bring it within the rule of the Kiley case.

In an unreported case decided by our Court of Appeals shortly after the decision in the Kiley case, the Court of Appeals held against the enforcement of the restriction saying in substance that the court was "constrained" to follow the Kiley case, but there was no general plan involved in the Court of Appeals case.

In **Shaefer v National Co., 5 Abs 103,** it was held that the words "grantor and grantees desiring to make the said land and other lots in the vicinity more desirable for residence property" put the gran-

tee on notice that restrictions were contained in the deeds of other land owners and that such other owners could enforce the restrictions.

In **Baysinger v Black, 5 Abs 660, (1926),** it was held that where the grantor does not reserve any part of the property for himself it is almost conclusive that the covenants which he takes from a purchaser are intended for the benefit of each purchaser as against others.

It is not essential to defendant's contention that the plaintiff should have had actual knowledge of each and every provision of the conveyances of lots in the subdivision. It is sufficient if he had notice.

The rule is clearly stated in **Mossop v Bidwell, 25 C.C. (N.S.) 502, (1916)** as follows:

"We think it is a well settled principle of law that whenever a party has information or knowledge of certain extraneous facts which of themselves do not amount to nor tend to show actual notice, but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim or right, and the circumstances are such that the inquiry if made and followed up with reasonable care and diligence would lead to a discovery of the truth, and a knowledge of the interest, claim or right which really exists, the party is absolutely charged with constructive notice of such interest, claim or right, and the presumption of knowledge is then conclusive."

In the case at bar there are the following undisputed facts from which a jury could well find that the plaintiff had notice when he made his contract in 1935:

1. The fact that almost all of the residences on the lots in the subdivision, including defendant's lot, were single or one family residences. While this is not notice in itself under the Kiley case, it is a circumstance to be considered in connection with the following additional facts.

2. The fact that plaintiff's contract was for the purchase of twelve or more lots and the contract provides that the restrictions in the deeds to be given thereafter should be inserted in each deed as the purchase price for the several lots should be paid. If there was no general plan then why the provision for the insertion of the restriction in each deed?

3. The fact that The Ruffner Realty Company contracted to sell to plaintiff all of the real estate remaining except the residence property of Mr. and Mrs. Ruffner which is remote from the part that was sold.

Plaintiff must have known that the company would have no further interest in the enforcement of said restriction and that in itself is almost conclusive. Baysinger v Black, supra.

In view of these facts the court can not find that the plaintiff was entitled to close his eyes to the obvious. He was put upon notice. Mossop v Bidwell, supra.

The fact that some lots had been conveyed without restrictions, or with slightly different restrictions, does not relieve the plaintiff from the restriction in his contract. Hartt v Rudder, 223 Mass., 207, and other cases hereinbefore cited.

The case has been considered as if the plaintiff had legal title to Lot 6 instead of having merely a contractual right or an equitable title. Being of opinion that the plaintiff was put upon notice at the time of making his contract, it is not necessary to consider what would be his rights if he had contracted without notice, but had been affected with notice before acquiring title. There is eminent authority for holding that in such case he would not be entitled to the protection which is accorded to the holder of the legal title, but that the defendant's equity being prior in time would prevail over the plaintiff's equity. **Anketel v Converse, 17 Oh St, 11; Elstner v Fite, 32 Oh St, 358-373.**

A decree may be entered finding that the restriction in plaintiff's contract prohibits the erection of the proposed apartment building. and finding that the defendant is entitled to enforce the said restriction.