R. F. McMAHAN, Sr., Appellant,

v.

Claude H. HUNSINGER et al., Appellees.

Court of Appeals of Kentucky.

Feb. 21, 1964.

———◆———

Boone & Triplett, Louisville, for appellant.

John A. Fulton, Joseph Rose, Lively M. Wilson, Donald R. Pierce, Louisville, for appellees.

DAVIS, Commissioner.

The appeal involves the interpretation of a restrictive covenant in a deed. The question is whether the restriction prohibits multifamily residence construction. The Jefferson Circuit Court entered judgment in a declaratory judgment action declaring that the restriction does preclude the construction of multifamily buildings. Appellant challenges the declaration of rights as being contrary to the law applicable to the situation.

Appellee Hunsinger owned a tract of about 35 acres of unimproved land on Hikes Lane in Jefferson County. On December 30, 1954, appellee conveyed 25 acres of the tract to Chester Villa Development Company by a deed which permitted subdivision of the land into building lots. The record reflects that 89 separate one-family residences have been constructed on lots in that subdivision. Owners of residences built on lots in that subdivision intervened in the trial court.

By a deed dated November 22, 1955, appellee conveyed the remaining ten acres of the 35 acre tract to Kentucky Christian Missionary Society. The deed provided certain restrictions relating to the use of the property as a church facility, and contained a restriction to be applicable in the event the grantee elected to sell the property to any grantee other than a church, as follows:

> "The property shall be used for residential purposes only and the houses to be erected thereon shall contain at least 950 square feet floor space and shall be of at least seventy per cent (70%) brick or stone construction."

The appellant purchased the ten acre tract from Kentucky Christian Missionary Society.[1] Appellant desires to utilize the property for construction of multiple-family residences, to contain more than 950 square feet of floor space and of greater than 70% brick or stone construction. This action was brought to test whether the quoted restriction prohibits the contemplated multifamily dwellings.

The trial court and parties recognize that our decision in McMurtry v. Phillips Inv. Co., 103 Ky. 308, 45 S.W. 96, 19 Ky.Law Rep. 2021, would rule this case unless an announced departure from the strict rule for construction of restrictive covenants requires a different result. Cf. Struck v. Kohler, 187 Ky. 517, 219 S.W. 435.

Our cases have noted the abrogation of the strict construction rule which was applicable when McMurtry, supra, was decided. See McFarland v. Hanley, Ky., 258 S.W.2d 3; Brandon v. Price, Ky., 314 S.W.2d 521; and Macy v. Wormald, Ky., 329 S.W.2d 212, and cases discussed in those opinions. Examination of the decisions discloses that no case in this jurisdiction has specifically overruled McMurtry. None of the late Kentucky cases may be said to be completely controlling on the particular facts before us.

It was observed in the Brandon case, supra, that building restrictions are regarded more as protection to the property owner,

---

1. Appellant had an option to purchase the ten acre tract when this suit was filed; he accepted fee simple deed for the tract June 29, 1962.

and the public than as restrictions upon the use of property. We said there that the general scheme and plan of the subdivision is an important factor to be considered in determining the purpose and intent of the restriction.

However, in this case we do not have a general scheme or plan applicable to the instant ten acre tract. It has not been developed as such. But the 25 acre portion of the tract of which it was once a part has been developed into a purely single-family residential area. The deed from Hunsinger to the developers of the subdivision on the 25 acre tract contained substantially the same restriction now under consideration. Many owners of residences in the 25 acre tract intervened in this action, asserting that they "understood" or "believed" that the ten acre tract was restricted to single-family residences unless the church group used it for church purposes. It is significant, however, that the conveyance for the 25 acre tract was *prior* to the conveyance for the ten acre tract involved in this case.

The weight of authority is said to hold that a restriction to "residence" or "residential purposes," of itself, does not prohibit multiple dwellings. See 14 A.L.R.2d 1403, § 9. In the same annotation, 14 A.L.R.2d 1376 et seq., the diversity of decisions in various jurisdictions is recorded. It is observed that the courts are in substantial agreement that a restriction to "residence" purposes, standing alone, does not prohibit multiple dwellings, but this unanimity disappears when the modifying term "a," "one," or "a single" is prefixed to the word "residence." Op. cit., p. 1409.

The trial judge recognized the McMurtry rule, but expressed the opinion that the general intention of the grantor in the instant case, viewed in the broader focus of Brandon, supra, justifies an opposite result here. In reaching that conclusion he relied much on Arnoff v. Chase, 101 Ohio St. 331, 128 N.E. 319, and Schadt v. Brill, 173 Mich. 647, 139 N.W. 878, 45 L.R.A.,N.S., 726. We do not find those cases controlling.

The Arnoff case restriction was couched in the words: " * * * one house only on each lot; all lots are sold for residence purposes only. * * *" The Ohio court found that the quoted language, *coupled with testimony concerning the general scheme* of the subdivision, prohibited a four-story apartment building on two lots.

The Schadt case involved this restriction: " * * * no store, factory or building, other than a dwelling house * * * shall be erected * * * premises shall be used for residence purposes only, * * * no dwelling shall be erected * * * at a cost of less than $5,000." In Schadt there was testimony showing the intent of the developer to have an exclusive high grade residential section; in addition, there was evidence that the other lot owners in the development had rigidly obeyed the residential restrictions.

We must seek the intention of the grantor from the language used, considered in light of such factors as the general scheme of the subdivision. We may not substitute what the grantor may have intended to say for the plain import of what he said. Cf. Gibson v. Sellars, Ky., 252 S.W.2d 911. We believe it is proper to assume that draftsmen of restrictive covenants—including the covenant now before us—acquaint themselves with decisions of the court relating to their effect. Certainly, such draftsmen should be familiar with legal precedents touching upon the subject matter with which they deal; they should be entitled to place some reliance in past constructions by the courts. The McMurtry decision is old and well known; it was in full effect in 1955 when the instant restriction was drawn. We observed in McMurtry and in many other decisions that draftsmen of such covenants may readily use language expressly prohibiting the use of property. The failure to use such specific language warrants the view that it was a deliberate and intended omission.

As noted, there is no general scheme applicable to the ten acre tract. We hold that

the residents of the 25 acre tract cannot be considered beneficiaries of the subsequently written restriction of the ten acre tract. The scheme of the 25 acre tract subdivision affords no dispositive basis for construction of the restriction under consideration. Thus, we are left with language substantially identical with that used in McMurtry. We perceive no reason for departing from the rationale of McMurtry, as it applies to the facts of the case at bar.

The judgment is reversed for judgment consistent with this opinion.